Lawrence SEBRING d/b/a Sebring
Builders, Appellant,
Cross-Appellee,

v.

Warren C. COLVER and Rita M. Colver,
Appellees, Cross-Appellants.

No. 4788/4827.

Supreme Court of Alaska.

Aug. 27, 1982.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellant and cross-appellee.

Vincent P. Vitale, Law Offices of Vincent P. Vitale, LeRoy E. DeVeaux, Wanamaker, DeVeaux & Crabtree, Edgar Paul Boyko, Anchorage, for appellees and cross-appellants.

OPINION

Before BURKE, C. J., and RABINOWITZ, CONNER, MATTHEWS and COMPTON, JJ.

PER CURIAM.

This appeal arises out of a contract entered into between Warren C. Colver and Rita M. Colver (hereinafter Colvers) and Lawrence Sebring, d/b/a Sebring Builders (hereinafter Sebring), for the construction by Sebring of a family residence for the Colvers. A jury trial ending on March 30, 1978, resulted in a verdict for the Colvers with damages assessed at $10,685.00. The special verdict form indicated that Sebring was liable to the Colvers for breach of warranties.

The Colvers, dissatisfied with the amount of the verdict, filed a motion for judgment notwithstanding the verdict or in the alternative a new trial. On April 27, 1978, Judge Victor D. Carlson denied the motion for judgment notwithstanding the verdict, but did grant the motion for new trial on the issue of damages.

On August 2, 1978, the area court administrator held a trial setting conference with the attorneys for Sebring and the Colvers. He informed them that he would not assign the retrial to a particular judge until shortly before its scheduled commencement in April 1979, but he indicated his preference for assigning it to Judge Carlson.

On January 3, 1979, Sebring moved to disqualify Judge Carlson peremptorily. Judge Ralph E. Moody denied the motion.

Prior to the commencement of the second trial before Judge Carlson, the court entered an order to clarify the issues in dispute. The order provided in part:

1. This case will be tried as if the defendant had admitted liability in his answer and is a case involving breach of warranty; therefore no issue of comparative negligence exists, only issues of causation, amount and mitigation of damages exist.

The second jury trial concluded on April 23, 1979, and resulted in a general verdict awarding the Colvers the sum of $54,000.00. In addition, the court awarded $15,289.56 in prejudgment interest, the sum which accrued since the Colvers took possession of their home on May 8, 1975.

We discuss below the four principal issues raised by Sebring on appeal:[1] (1) whether Judge Carlson abused his discretion in granting a new trial on the issue of damages; (2) whether the peremptory challenge to Judge Carlson was properly denied; (3) whether the court erred in failing to give a comparative negligence instruction; and (4) whether prejudgment interest was computed in a proper fashion.

---

1. The Colvers raise two meritless issues in their cross-appeal. First, the Colvers submit that because Sebring did not controvert the amount of damages which they sought to prove at trial, the denial of their motion for judgment notwithstanding the verdict was improper. We disagree since the cost of repairs was plainly disputed. Accordingly, the denial of the Colvers' motion was clearly warranted. *See Mullen v. Christiansen*, 642 P.2d 1345 at 1348–50, (Alaska 1982). Second, the Colvers challenge the jury instructions regarding Sebring's liability for selecting allegedly defective windows. We find no basis for this argument.

## I. MOTION FOR A NEW TRIAL

The first issue we address is whether it was proper for the trial court to grant the Colvers' motion for a new trial. Alaska R.Civ.P. 59.[2] Sebring submits that the first jury verdict awarding $10,685.00 in damages was supported by the record, and, alternatively, that even were it proper for the court to grant a new trial, it was improper for the court to limit the new trial to the issue of damages.

We have oftentimes noted that trial courts enjoy broad discretion in ruling on a motion for a new trial.[3] Accordingly, we will not interfere with the trial court's discretion "except in the most exceptional circumstances and to prevent a miscarriage of justice."[4] In review of a trial court's decision to grant a new trial, an abuse of discretion is established where the court is "left with the definite and firm conviction on the whole record that the judge had made a mistake. . . ."[5]

Upon our review of the record, it is plain that the trial court did not abuse its discretion in granting a new trial on the limited issue of damages. We agree with both of the considerations noted by the trial court in support of its decision. First, the trial court noted that Sebring's improper inquiry into the value which the Colvers placed on the house in the course of settlement discussions prejudiced the jury's assessment of damages.[6] It is axiomatic that an offer of compromise is inadmissible.[7] Though the court subsequently admonished the jury to disregard such information, the trial court concluded that Sebring's inquiry into the settlement negotiations impermissibly tainted the jury's deliberations. Second, even were the inquiry into the settlement discussions not at issue, the trial court concluded that once liability was established, there was no reasonable evidentiary basis for the jury to limit damages to $10,685.00. We note, in this regard, that Sebring himself introduced evidence regarding the cost of certain defects which, in sum, exceeded the jury's damage award. Accordingly, we cannot say that the trial court erred in granting a new trial on the issue of damages.[8]

## II. PEREMPTORY CHALLENGE OF JUDGE CARLSON

Sebring submits that it was improper for the second trial to proceed before Judge Carlson. After the court ordered a new trial on the issue of damages, Sebring filed

2. Civil Rule 59 provides in part:
   (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.

3. *See e.g., Bailey v. Lenord*, 625 P.2d 849, 856 (Alaska 1981); *City of Palmer v. Anderson*, 603 P.2d 495, 501 (Alaska 1979); *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978); *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 723 (Alaska 1973); *Ahlstrom v. Cummings*, 388 P.2d 261, 262 (Alaska 1964).

4. *Ahlstrom v. Cummings*, 388 P.2d at 262.

5. *Dowling Supply & Equip., Inc. v. City of Anchorage*, 490 P.2d 907, 909 (Alaska 1971), *quoting National Bank of Alaska v. McHugh*, 416 P.2d 239, 244 (Alaska 1966).

6. When Sebring asked the Colvers whether they would be willing to settle the dispute by selling the house, the Colvers responded that they would sell the house to Sebring for $220,000.00. At trial, Sebring's counsel asked Mr. Colver whether he had recently valued the house at $220,000.00. Following a hearing outside the presence of the jury, the trial court sustained the Colvers' objection to the inquiry. The court reserved consideration of the Colvers' motion for a mistrial.

7. Alaska R.Evid. 408; *see Redman v. Department of Educ.*, 519 P.2d 760, 767–68 (Alaska 1974).

8. Sebring argues that it was improper for the court to grant a new trial as to only the question of damages. Sebring submits that liability was clearly disputed, at least as to many deficiencies in the home, and that the jury verdict, if indeed unreasonably low, reflects a compromise. That liability was disputed is of no consequence. There is, moreover, no support in the record for Sebring's assertion that some jurors compromised their views on liability in return for a reduced assessment of damages. We conclude that the trial court's determination that liability was established in the first trial was not an abuse of discretion.

a notice of change of judge pursuant to Civil Rule 42(c). Judge Moody, the Presiding Judge of the Third Judicial District, summarily denied the motion. This denial, Sebring argues, deprived him of the substantive right accorded litigants to a trial before a fair and impartial judge.[9]

In civil cases, the procedure and scope of the right to a peremptory challenge established in AS 22.20.022 is controlled by Civil Rule 42(c).[10] At issue on appeal is whether Civil Rule 42(c) affords a litigant a right to challenge without cause the retrial of a case before the judge who presided over the original trial and who granted an opposing party's motion for a new trial.

■ We conclude that Sebring waived his right to a peremptory challenge once Judge Carlson presided over the first trial. Civil Rule 42(c)(4)(i) provides that a party waives the right to challenge a particular judge when s/he knowingly participates in "any judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits . . . ." Sebring's position is that the retrial is a "new" proceeding, and that a litigant's right to a peremptory challenge is renewed upon the grant of a motion for a new trial. That argument was implicitly rejected in *Priest v. Lindig*, 591 P.2d 1299, 1301 (Alaska 1979).[11] In *Priest* we held that where a case is reversed on appeal and remanded for a new trial, the parties have no right to exercise a peremptory challenge to the retrial of the case before the judge who pre-

sided over the original trial. *Id.*[12] We note, furthermore, that Sebring's argument misconstrues the purpose of the waiver provision. The waiver provision in Rule 42(c) prevents a party from challenging a judge because of the resolution of any aspect of the merits of the controversy. Sebring knowingly participated in a proceeding before Judge Carlson which concerned the merits of the controversy. To allow Sebring to challenge Judge Carlson merely because his rulings in the original trial were not as favorable as Sebring had desired would subvert the purpose of the waiver provision.

### III. COMPARATIVE NEGLIGENCE INSTRUCTION

■ Sebring next asserts that the verdict must be reversed because Judge Carlson refused to instruct the jury on comparative negligence. Comparative negligence is a defense to breach of implied warranty. *Pepsi Cola Bottling Co. v. Superior Burner Service Co.*, 427 P.2d 833, 842 (Alaska 1967). The trial judge, however, should not instruct the jury on comparative negligence unless sufficient evidence is presented at trial from which a reasonable person could infer that the plaintiff was contributorily negligent. *Wilson v. City of Kotzebue*, 627 P.2d 623, 631–32 (Alaska 1981). We have carefully reviewed the trial record and have found the evidence of contributory negligence insufficient to warrant a jury in-

---

9. *See generally* Comment, *Peremptory Challenges of Judges in the Alaska Courts*, 6 U.C.L.A.-Alaska L.Rev. 269 (1977).

10. *Tunley v. Municipality of Anchorage School Dist.*, 631 P.2d 67, 71 *as modified on denial of rehearing* (Alaska 1981).

11. The Arizona Supreme Court, construing a rule similar to Civil Rule 42(c), held that a litigant has no right to a peremptory challenge where, following a mistrial, a retrial is before the same judge who presided at the original trial. *King v. Superior Court*, 108 Ariz. 492, 502 P.2d 529 (1972) (In banc).

12. Civil Rule 42(c)(3) provides that a peremptory challenge is timely if filed before commencement of trial and within five days after notice that the case had been assigned to a specific

judge. We noted in *Priest* that "it would be fair to presume that the same judge would preside at the second trial in the absence of a reassignment of the case to another judge." 591 P.2d at 1301. We therefore concluded that the peremptory challenge at issue in *Priest* was not timely.

A similar argument is applicable to the present case. Sebring's right to exercise a peremptory challenge as to Judge Carlson expired five days after notice was given that Judge Carlson would preside at the original trial, or, at the latest, at the time the trial commenced. We reject, in this regard, Sebring's assertion that the area court administrator's representation that the retrial was unassigned defeats the *Priest* presumption.

struction. The court's failure to instruct the jury on comparative negligence does not, therefore, constitute reversible error.[13]

## IV. PREJUDGMENT INTEREST

■ The last issue we address is the award of prejudgment interest. In our recent opinion of *American National Watermattress Corp. v. Manville*, 642 P.2d 1330 (Alaska 1982), we reiterated that prejudgment interest is in the nature of compensatory damages, not costs.[14] We noted that "prejudgment interest is necessary to compensate plaintiff for the loss of the use of the money from the date of injury until the date of judgment."[15]

In the instant case, the jury returned a general verdict of $54,000.00. Of this amount, it is reasonable to assume that $12,000.00 constituted reimbursement for money the Colvers had already spent on repairs, and that the balance, $42,000.00, represented the cost of future repairs.[16] On May 24, 1979, Judge Carlson entered judgment. In the judgment, he reduced the general verdict by $5,000.00 because Sebring's bonding company had paid the Colvers $5,000.00 on February 13, 1978. Judge Carlson awarded the Colvers prejudgment interest on the remaining $49,000.00 judgment principal, with interest commencing on the date when the Colvers moved into their home, May 8, 1975.

We conclude that the trial court erred in computing the appropriate award of prejudgment interest.

All parties agree that prejudgment interest should be awarded on $12,000.00 between May 8, 1975, the date the Colvers moved into the house, and February 13, 1978, the date the bonding company paid $5,000.00 to the Colvers. Any prejudgment interest awarded on that portion of the verdict which, in effect, reimburses the Colvers for amounts spent on repairs must reflect the tender of $5,000.00 in partial reimbursement. Following February 13, 1978, prejudgment interest is therefore only available on the remaining balance ($7,000.00).

■ We now turn to whether prejudgment interest should be granted on that portion of the jury verdict awarded to compensate the Colvers for future repairs. Upon our review of the record, we conclude that the probable basis for the jury award was the estimated cost of repairs at the time of trial.[17] Since the financial impact of the passage of time was thus incorporated into the jury's damage award, any award of prejudgment interest on this amount would therefore constitute a double recovery.[18] Accordingly, the award of prejudgment interest on such damages is reversed.

**13.** The relevant portion of the Preliminary Order entered by the court to clarify the issues pending in the second trial is set forth at page 3, *supra*. It is arguable that the court improperly concluded that comparative negligence is not an available defense where liability is founded upon a breach of implied warranty theory. Even were this the case, though, the failure to give a comparative negligence instruction was harmless given the court's instructions to the jury on causation and mitigation of damages. The instruction to the jury on mitigation of damages is particularly noteworthy:

> A person whose property has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize the damages, and he may not recover from losses which could have been prevented by reasonable efforts on his part or by expenditures that he might reasonably have made.

**14.** *See also City and Borough of Juneau v. Commercial Union Ins. Co.*, 598 P.2d 957, 959–60 (Alaska 1979); *Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976); *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973).

**15.** *American Nat'l Watermattress Corp. v. Manville*, 642 P.2d at 1343 (citations omitted).

**16.** We note that during closing argument to the jury, the Colvers' attorney requested that the jury award $12,000.00 as reimbursement to the Colvers for money they had already spent on repairs and an additional amount as the cost to repair other alleged defects.

**17.** *See Haskins v. Shelden*, 558 P.2d at 494–95.

**18.** *Farnsworth v. Steiner*, 638 P.2d 181, 184 (Alaska 1981); *Anchorage Asphalt Paving Co. v. Lewis*, 629 P.2d 65, 70 (Alaska 1981); *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879, 888 (Alaska 1976); *Haskins v. Shelden*, 558 P.2d at 494–95.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Justice, dissenting in part.

Although I agree with the court's ruling that the superior court did not abuse its discretion in granting the Colvers' request for new trial, I do not agree that the second trial should have been limited to the issue of damages alone. In my view the jury's verdict in the first trial did not establish Sebring's liability for the full amount of damages sought by the Colvers, and thus it was error to remove the issue of liability from the second trial.

Throughout the proceedings in this case Sebring more or less agreed that the Colvers' home suffered from a number of defects but contended that most of the home's problems were attributable to design features upon which the Colvers insisted or to defects in work for which he was not responsible rather than to any shortcomings in his workmanship.

In light of the fact that Sebring's liability was contested, the first jury's relatively low damages award indicates one of several possibilities. First, the jury might have concluded that only a small portion of the home's defects were Sebring's fault. Second, the jury might have reached a compromise verdict, awarding relatively low damages in order to secure the votes of jurors who entertained doubts about Sebring's liability for any damages. Third, the jury's deliberations might have been influenced by the passing reference to the value which the Colvers placed upon their house during settlement negotiations. Fourth, the jury might have been confused by the many collateral matters which were presented during the protracted first trial. Regardless which of these explanations is correct, one point is clear: it is impossible to say with certainty that the first jury's verdict established Sebring's liability for the full amount of the Colvers' damages. Thus, I would hold that the superior court erred in removing the issue of Sebring's liability from the second trial.