NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Appellant and Cross–Appellee,

v.

Ferdinand PLEASANT, Appellee and Cross–Appellant.

Nos. S–5579, S–5619.

Supreme Court of Alaska.

Dec. 30, 1994.

Rehearing Denied Jan. 27, 1995.

Matthew K. Peterson, Kenneth M. Gutsch, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Barry Levenstam, Jenner & Block, Chicago, IL, for appellant and cross-appellee.

John S. Hedland, Christopher R. Cooke, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, for appellee and cross-appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, Justice, pro tem.[*]

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

Ferdinand Pleasant was in the process of taking apart a dump truck brake when it violently came apart. A heavy metal plate struck Pleasant in the face, knocking him unconscious and causing him permanent injuries. He sued the manufacturer of the truck, Navistar International Transportation Corporation; the seller of the truck, Alaska Truck Center; and the manufacturer of the brake, Indian Head Industries, Inc. Pleasant settled his claim against Indian Head. Subsequently, a jury awarded him in excess of $3 million. After the verdict, Pleasant settled his claim against Alaska Truck Center. The remaining defendant, Navistar, has appealed, raising a number of claims of error relating to the conduct of the trial and disposition of certain post-trial motions. Pleasant has cross-appealed from the court's failure to award him prejudgment interest on future damages. We hold that the court erred in calculating the judgment and that the post-trial settlement with Alaska Truck Center satisfied the judgment.

### II. FACTS

In 1985, the city of Quinhagak purchased a dump truck manufactured by Navistar from the Alaska Truck Center. The truck arrived in Quinhagak in July of 1986. Pleasant was employed by the city as an equipment operator. About three weeks after the truck was delivered to the city the truck was driven into a soft area and the brakes were covered and filled with mud. Dirt and gravel entered the brake through a hole which should have been covered by an access plug but was not. Pleasant and his supervisor, Dave Gilbert, decided that the brake needed to be taken apart and cleaned. Neither Gilbert nor Pleasant knew that the brake contained a powerful spring having 2,500 pounds of force. As Pleasant began to disassemble the brake by removing a clamp ring, the spring released, forcing the metal brake cover to fly into Pleasant's face, and causing unconsciousness, facial fractures, and permanent double vision.

Each brake on the truck consisted of two mechanisms: an air brake and a spring brake. If the air brake failed the spring brake was designed to automatically engage and stop the truck. If this occurred, the driver would have to recompress the spring, that is "cage" the brake in order to move the truck. The operator's manual contained directions for caging the brake in emergency situations.

The brake system has access holes in the brake cover. These holes make it possible for the operator to cage the brake. The access holes are normally covered by access plugs. During shipping, however, Navistar removed the plugs and stored them in the cabin of the truck for safekeeping. Navistar instructed the shipper to reinstall the access plugs when the truck was delivered and instructed Alaska Truck Center to inspect the truck on its arrival to ensure that the access plugs had been reinstalled. These instructions were not followed and the truck arrived in Quinhagak with the access plugs still in the cab of the truck and with no instructions to the city that the access plugs would need to be reinstalled.

The operator's manual for the truck does not contain a warning concerning the possibility of a spring brake explosion. It does, however, show operators how to cage the

---

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

brake when the brake is activated by a loss of air pressure. A warning embossed on the metal cover of the brake itself states: "Caution, spring loaded. To cage power spring, remove cover, engage release bolt in through top of head and tighten up." Because it was caked with mud, Pleasant was not aware of this warning. A warning label placed by Pleasant inside the cab of the truck read: "Warning, do not operate or service this machine until you have read and understand the operation and maintenance manuals supplied with this equipment." The maintenance manual, however, was not included with the truck. A few days before the accident, Pleasant requested a manual from Navistar but it had not yet been received.

Following the accident, Pleasant required surgery to repair his facial fractures and subsequent surgery in an effort to cure or reduce his double vision. The latter was unsuccessful and the double vision persists. As a consequence, Pleasant lacks binocular vision and depth perception. He wears thick, heavy glasses in an effort to mitigate his double vision, and suffers periodic facial pain for which he takes no medication.

Despite his injuries, Pleasant leads a productive life. He continues to work for the city of Quinhagak as a truck driver, equipment operator and foreman. He also engages in commercial fishing, and is a subsistence hunter and fisherman.

## III. *PROCEDURAL HISTORY*

Pleasant filed this action against Navistar, Alaska Truck Center, Indian Head Industries, and certain individuals employed by Alaska Truck Center. Pleasant settled with Indian Head for $200,000. As part of the settlement, Pleasant released Navistar, among others, from liability arising from negligence or fault on the part of Indian Head including "allegations ... that the warnings embossed on the brake ... were inadequate." Pleasant, however, specifically reserved claims against the other parties except for claims arising through any negligence or wrongdoing on the part of Indian Head. The case was tried to a jury in Bethel. A special verdict was returned, finding as follows:

(1) the truck was defective when it left the possession of Navistar and that this defect was a legal cause of harm to Pleasant;

(2) Navistar was negligent and this negligence was a legal cause of injury to Pleasant;

(3) Alaska Truck Center was negligent and its negligence was a legal cause of harm to Pleasant;

(4) Pleasant was negligent in a manner that was a legal cause of his harm;

(5) the parking brake manufactured by Indian Head was defective and this defect was a legal cause of harm to Pleasant;

(6) Indian Head was negligent and this negligence was a legal cause of harm to Pleasant;

(7) the combined responsibility of all parties was as follows:

Navistar—15%

Alaska Truck Center—30%

Pleasant—10%

Indian Head—45%

(8) Pleasant suffered damages as a consequence of the accident as follows:

(a) Past economic loss (earnings, medical expenses, reduction of subsistence harvest): $92,000

(b) Past non-economic loss (pain and suffering, physical impairment, disfigurement, inconvenience): $500,000

(c) Future economic loss (earnings, medical expenses, reduction of subsistence harvest): $512,500

(d) Future non-economic loss (pain and suffering, physical impairment, disfigurement, inconvenience): $1,900,000

Total: $3,004,500

In addition, the jury awarded punitive damages of $500,000 assessed solely against Alaska Truck Center. After the verdict was announced but before judgment was entered, Alaska Truck Center settled with Pleasant for $2.1 million, $577,724 of which Alaska Truck Center and Pleasant allocated as payment in full of the punitive damage award, including attorney's fees and costs thereon.

Navistar filed post-trial motions for a new trial, judgment notwithstanding the verdict

and remittitur. These motions were denied. The trial court entered judgment against Navistar in the sum of $1,027,530.31 plus attorney's fees of $105,253.03. From this judgment Navistar appeals. Navistar's arguments on appeal are as follows:

1. Judgment notwithstanding the verdict should have been granted because no reasonable jury could have found that Navistar proximately caused Pleasant's injury.

2. Navistar's motion for a new trial should have been granted because evidence of Navistar's liability was completely lacking and the verdict resulted from appeals to prejudice.

3. The trial court erred in allowing Pleasant's expert, Daniel Solomonson, to testify with regard to Navistar's warnings.

4. The jury's award for economic loss was grossly inflated.

5. The jury's non-economic award was grossly inflated.

6. The court erred in its calculation of damages attributable to Navistar (a) by failing to reduce the verdict by Indian Head's 45% share of fault, (b) by failing to reduce the judgment by the entire $2.1 million given as consideration for Alaska Truck Center's release, and (c) by awarding enhanced prejudgment interest at the rate of 15.5%.

Pleasant has taken a cross-appeal, contending that the court erred in failing to allow prejudgment interest on damages for future economic and non-economic losses.

We hold that Navistar is correct in its contentions 6(a) and (b) concerning necessary reductions in the judgment. Because these reductions reduce the judgment to a negative number we need not discuss Navistar's other points on appeal. Even in light of the reductions an award of enhanced prejudgment interest on items of future damages would result in a positive award to Pleasant. We therefore rule on the cross-appeal, holding that it lacks merit.

## IV. DISCUSSION

### A. The court erred in its calculation of damages attributable to Navistar.

The argument under this heading has three parts. Navistar claims that the court erred by (a) failing to reduce the verdict by Indian Head's 45% share of fault, (b) by failing to reduce the verdict by the entire $2.1 million given as consideration in the Alaska Truck Center settlement, and (c) by awarding prejudgment interest at the enhanced rate of 15.5%. We agree with the first two points and, since they are dispositive, need not discuss the third.

The law applicable to the post-verdict calculations made by the court is reflected in AS 09.17.080 as it existed in 1986,[1] AS

---

1. In 1986, AS 09.17.080 provided:
   *Apportionment of damages.* (a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.17.090, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating
   (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
   (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.17.090.
   (b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of

   fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.
   (c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.17.090, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
   (d) The court shall enter judgment against each party liable on the basis of joint and several liability, except that a party who is allocated less than 50 percent of the total fault allocated to all the parties may not be jointly liable for more than twice the percentage of fault allocated to that party.

09.17.090, which has now been repealed,[2] the offer of judgment rule, Alaska Civil Rule 68,[3] and AS 09.30.065.[4]

The court's post-verdict calculations were as follows: total compensatory damages were $3,004,500. The court calculated prejudgment interest on this sum at the enhanced rate of 15.5%[5] from December 5, 1987,[6] until the effective date of the judgment, July 31, 1992. This amounted to $426,959.61. The verdict, plus prejudgment interest, was therefore $3,431,459.61. The court further adjusted the verdict by deducting enhanced prejudgment interest on the $200,000 received from Indian Head and on the $1,525,-046 allocated to compensatory damages received from Alaska Truck Center. The adjusted verdict was thus reduced to $3,425,-101.04. The court then applied the cap formula of former AS 09.17.080(d) by doubling the percentage of fault allocated to Navistar (.15 × 2 = .30) and multiplying the result by the adjusted verdict, resulting in an award against Navistar of $1,027,530.31.

The court then tested this sum against the sum that would be awarded against Navistar assuming joint and several liability with no cap formula. This sum would have been $3,425,101.04, less $200,000 to account for the Indian Head settlement, less $1,525,046 to account for the Alaska Truck Center's settlement allocated to compensatory damages, and less $342,510.10 for Pleasant's 10% comparative negligence, resulting in a total of $1,357,544.94. As this amount was greater than the capped amount, the capped amount controlled.

1. **The court erred in failing to reduce the verdict by Indian Head's 45% of the share of fault.**

Navistar's first point concerning these calculations is that the court should have reduced the adjusted verdict by the 45% of

2. AS 09.17.090, repealed by ch. 14 § 17, SLA 1987, provided:

*Effect of release.* When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death

(1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasors to whom it is given from all liability for contribution to any other tortfeasor.

3. Civil Rule 68 provides in relevant part:

**Offer of Judgment.** (a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued. The offer may not be revoked in the 10 day period following service of the offer. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service, and the clerk shall enter judgment. An offer not accepted within 10 days is considered withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. The fact that

an offer is made but not accepted does not preclude a subsequent offer.

(b) If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest accrued up to the date judgment is entered shall be adjusted as follows:

(1) if the offeree is the party making the claim, the interest rate will be reduced by the amount specified in AS 09.30.065 and the offeree must pay the costs and attorney's fees incurred after the making of the offer (as would be calculated under Civil Rules 79 and 82 if the offeror were the prevailing party). The offeree may not be awarded costs or attorney's fees incurred after the making of the offer.

(2) if the offeree is the party defending against the claim, the interest rate will be increased by the amount specified in AS 09.30.065.

4. AS 09.30.065(2) provides for an increase of interest "by five percent a year" where the defendant is the offeree who has declined an offer more favorable to the defendant than the judgment.

5. Pleasant had made an offer of judgment which was more favorable to Navistar than the judgment; thus, the court applied enhanced interest under Civil Rule 68(b)(2) and AS 09.30.065(2).

6. Prejudgment interest began to run on the date of written notification that the injury occurred and a claim would be brought. *See* AS 09.30.070(b).

fault attributable to Indian Head. Navistar makes two independent arguments in support of this point, both of which are based on the terms of the "settlement and hold harmless agreement, and release of all claims" (the release) entered into between Pleasant and Indian Head. The release provided in part:

> Pleasant ... releases ... and forever discharges Navistar ... of and from all claims ... for any and all injury, damage or loss ... sustained by Pleasant, arising from ... negligence or other fault ... by Indian Head, including, without limiting the foregoing, allegations that the Indian Head brake which allegedly injured Pleasant was a defective product in its design or manufacture or that the warnings embossed on the brake or affixed to the brake were inadequate or nonexistent.... [7]

One of Navistar's arguments relates the language of the release to AS 09.17.090(1).[8] Specifically, Navistar argues that the statutory language mandating reduction of a settled "claim against the others to the extent of any amount stipulated by the release ..., or in the amount of the consideration paid for it, whichever is the greater" requires a reduction of .45 times the adjusted verdict as the "amount stipulated by the release." Navistar's other argument is that under the express terms of the release, Pleasant released Navistar from injuries caused by the fault of Indian Head. Navistar argues, in other words, that the release imposed several liability under which Navistar vis-a-vis Indian Head would be responsible for only its share of the total fault.

■ In our view Navistar's second argument is a logical one. It is difficult to conceive of any meaning which the language discharging Navistar in the release could have other than that Navistar was to be discharged from the amount of the verdict multiplied by Indian Head's share of the fault—that is, to use the language of the

release, from "the damage ... sustained by Pleasant arising from ... fault ... by Indian Head."

Pleasant does not respond to this argument. Under the terms of former AS 09.17.090 a release of one joint tortfeasor does not discharge other tortfeasors from liability "unless its terms so provide." Here, the terms of the settlement so provide. The court should therefore have deducted 45% of the adjusted verdict of $3,425,101.04, an amount equal to $1,541,295.40.

**2. The court erred by failing to reduce the verdict by the entire $2.1 million given as consideration for the Alaska Truck Center release.**

In addition to finding that Alaska Truck Center was 30% at fault for Pleasant's injuries, the jury awarded punitive damages against Alaska Truck Center in the amount of $500,000. After the jury verdict, Alaska Truck Center settled with Pleasant for $2.1 million, specifically allocating $574,954 of this total to punitive damages and attorney's fees and costs attributable to punitive damages. This left $1,525,046 of the total settlement attributable to the compensatory damage claim against Alaska Truck Center.

Navistar argues that the entire $2.1 million should have been deducted from the adjusted verdict. It bases this argument on the now repealed provisions of AS 09.17.090, which requires reduction of a claim against other joint tortfeasors "to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater." Navistar argues that the consideration paid for the settlement with Alaska Truck Center is $2.1 million.

■ Pleasant counters that Alaska Truck Center's and Navistar's liability were not overlapping with respect to the $574,954 for punitive damages, fees and costs. In no sense is this a complete argument. Even

---

**7.** The release also provided:
Pleasant excludes from this release, and specifically reserves, all claims against any party except Indian Head, including but not limited to Navistar ... based upon any act, omission or circumstance giving rise to liability other

than negligence or other fault or wrongdoing or act or omission by Indian Head which would provide a basis for imposition of any liability whatsoever upon Indian Head.

**8.** *See supra* note 2.

though Navistar was not liable for punitive damages and the jury found that Alaska Truck Center was, the fact remains that AS 09.17.090(1) calls for a reduction in the amount of the total consideration paid for the release, not merely the consideration which can be allocated to common liability. If the rule were otherwise, the plaintiff and the settling tortfeasor could easily avoid the impact of AS 09.17.090, allocating some part of the consideration paid for a release to punitive damages or to some other item of damage for which other tortfeasors would not be liable.

In *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 758 (Alaska 1992), we held that the term "consideration paid," as used in former AS 09.16.040(1),[9] included amounts paid in a loan receipt agreement which the plaintiff had an obligation to repay: "*[A]nything* received by way of a covenant not to sue operates as a payment *pro tanto* upon any judgment obtained against the others." *Id.* (quoting *Cullen v. Atchinson, Topeka & Santa Fe Ry. Co.*, 211 Kan. 368, 507 P.2d 353, 362 (1973)) (emphasis added). Amounts which a plaintiff must repay are, of course, not overlapping damages, but they are "consideration paid." Similarly, a payment allocated to punitive damages does not overlap with a compensatory award, but it too falls readily within the statutory term "consideration paid." Accordingly, we conclude that the statutory term "amount of the consideration paid for it" includes all consideration, including that allocated to punitive damages.

Our conclusions result in the following calculation of damages. From the total award of $3,425,101.04 the following should be deducted: damages resulting from Indian Head's fault from which Pleasant released Navistar, $1,541,295.40; the release consideration paid by Alaska Truck Center, $2.1 million; and the amount for Pleasant's compara-

tive negligence, $342,510.10. The final figure is a negative number.

B. *Cross–Appeal—the court did not err in failing to allow prejudgment interest on damages for future economic and non-economic losses.*

After the trial, Pleasant filed a proposed judgment against Navistar including prejudgment interest on past and future damages. Navistar opposed the form of judgment, arguing that any award of prejudgment interest on future damages would amount to a double recovery for Pleasant. The trial court agreed and entered judgment against Navistar for its share of fault and prejudgment interest on Pleasant's past economic and non-economic damages only. Pleasant moved for reconsideration, arguing that Alaska law required the defendant to pay prejudgment interest on the entire damage award. The trial court denied Pleasant's motion and Pleasant appeals.[10]

Prior to passage of the 1986 Tort Reform Act, this court held that prejudgment interest on future economic damage awards was proper. *See Hertz v. Berzanske*, 704 P.2d 767, 773 n. 9 (Alaska 1985) (relying on *State v. Phillips*, 470 P.2d 266 (Alaska 1970)). The Tort Reform Act does not specifically address prejudgment interest on future damage awards, but requires their reduction to present value.[11] Prior to the act awards of future damages were not reduced to present value. *Beaulieu v. Elliott*, 434 P.2d 665, 671 (Alaska 1967). Pleasant argues that since the legislature could have but did not enact legislation precluding prejudgment interest on future damage awards, it did not intend to overrule this court's previous holdings on the subject.

The seminal case on prejudgment interest is *State v. Phillips*, 470 P.2d 266 (Alaska 1970). In *Phillips*, this court held that prejudgment interest would be awarded on "[a]ll damages ..., whether liquidated or unliqui-

---

9. Former AS 09.16.040(1) was identical to the controlling statute in this case, former AS 09.17.090.

10. The determination of whether Pleasant is entitled to prejudgment interest on the future damage award is a question of law subject to this court's independent judgment. *Tookalook Sales & Service v. McGahan*, 846 P.2d 127, 129 (Alaska 1993).

11. AS 09.17.040(b).

dated, pecuniary or nonpecuniary ... from the time the cause of action accrues, unless for some reason peculiar to an individual case such an award of interest would do an injustice." *Id.* at 274. Despite the breadth of this language, it was argued in *Hertz v. Berzanske*, 704 P.2d 767 (Alaska 1985), that prejudgment interest should not accrue on lost future earning capacity. We rejected this argument based on *Phillips*. 704 P.2d at 773 n. 9.

■ The rationale underlying awards of prejudgment interest is that money is due in a tort case when the plaintiff is injured through the tortious act of the defendant. In an ideal system a trial could be conducted immediately following the injury at which time all of the plaintiff's claims could be valued and a judgment entered. The judgment, of course, would bear interest until it was paid. Since the ideal of instant adjudication cannot be met, and money is worth less the later it is received, it is ordinarily unjust not to award prejudgment interest between the time of the accident and the adjudication. *Phillips*, 470 P.2d at 273, 274.

In *Phillips* we gave the following hypothetical:

> Suppose A inflicts precisely the same amount of *damage of any type* on B and C at the same moment, evaluated by juries as $1,000 each. If C wins his judgment a year later than B and does not get prejudgment interest for the year, C recovers less than B for the same injury; C has been deprived of the use value of $1,000 for one year while B has enjoyed the use value. Interest is the market, or in the case of the legal rate the legislative, evaluation of the use value of money. B obviously has not gotten too much for he had a right to be made whole immediately upon

> being injured, and B and C should get the same amount for the same injury, so C must have gotten too little. Only by awarding prejudgment interest from the time the cause of action accrues, when a plaintiff is entitled to be made whole, can the sort of injustice which happened to C in the hypothetical case be avoided.

*Id.* at 274 (emphasis added). This hypothetical applies, as it states, to "damage of any type" including future damage. Indeed, as a plaintiff has "a right to be made whole immediately upon being injured," nearly all damages at that point are future damages.

The prejudgment interest statute no longer provides for interest after it is "due." Instead, prejudgment interest is to run "from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier." AS 09.30.070(b). Although this modification changes the date from which prejudgment interest begins to run, it does not change the elements of damage on which prejudgment interest does run.

■ However, the assumption in the *Phillips* hypothetical does not take into account cases in which a future stream of income is discounted not to the time of injury (or the time of accrual of prejudgment interest) but to the time of trial. If future damages were discounted back to the time of injury, it would be appropriate to allow prejudgment interest on future damages so discounted.[12] It is, however, a double recovery to permit prejudgment interest on future sums which are discounted only to the time of trial, for such sums are greater than they would be if they were discounted to the time of injury—a

---

12. As the Supreme Court of the United States observed in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 538 n. 22, 103 S.Ct. 2541, 2551 n. 22, 76 L.Ed.2d 768 (1983):

> At one time it was thought appropriate to distinguish between compensating a plaintiff "for the loss of time from his work which has actually occurred up to the time of trial" and compensating him "for the time he will lose in [the] future." C. McCormick, *Damages* § 86 (1935). This suggested that estimated future earning capacity should be discounted to the

date of trial, and a separate calculation should be performed for the estimated loss of earnings between injury and trial. *Id.*, §§ 86, 87. It is both easier and more precise to discount the entire lost stream of earnings back to the date of injury—the moment from which earning capacity was impaired. The plaintiff may then be awarded interest on that discounted sum for the period between injury and judgment, in order to ensure that the award when invested will still be able to replicate the lost stream.

difference attributable to the interaction of the discount rate and the intervening period. For example, in *Sebring v. Colver*, 649 P.2d 932, 936 (Alaska 1982), we disallowed an award of prejudgment interest on the cost of future repairs, as estimated at the time of trial: "Since the financial impact of the passage of time was thus incorporated into the jury's damage award, any award of prejudgment interest on this amount would therefore constitute a double recovery." *Id.* at 936; *see also City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 226 (Alaska 1978) (prejudgment interest disallowed on future lost profits which must be discounted to present value as of the date of judgment). Under the court's instructions, the jury was directed to reduce the elements of future damage to present value as of the time of trial rather than the time of injury. Given this fact, the trial court did not err in refusing to award prejudgment interest on these elements.

## V. CONCLUSION

The trial court's calculations of the award against Navistar erroneously failed to take into account the amount by which Pleasant discharged Navistar in accordance with the release between Pleasant and Indian Head and the total consideration given by Alaska Truck Center for its release. When these amounts are properly considered, the judgment against Navistar is satisfied. The court did not err in refusing to add prejudgment interest to future damages awarded by the jury because they were reduced to present value to the time of trial rather than to the time of injury. This case is REMANDED to the superior court with instructions to enter a satisfaction of judgment in favor of Navistar.