Sam A. McCONKEY, M.D., Appellant
and Cross–Appellee,

v.

Barbara L. HART, Appellee
and Cross–Appellant.

Nos. S–7154, S–7104.

Supreme Court of Alaska.

Nov. 29, 1996.

As Modified on Denial of Rehearing
Feb. 2, 1997.

Craig F. Stowers, Clapp, Peterson & Stowers, Anchorage, for Appellant and Cross-Appellee.

Lloyd I. Hoppner, Hoppner & Paskvan, P.C., Fairbanks, for Appellee and Cross-Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

This appeal presents a question of interpretation of the prejudgment interest statute, AS 09.30.070, and a question of the appropriateness of awarding prejudgment interest on an award of future damages. The cross-appeal challenges the constitutionality of AS 09.30.070 on equal protection and due process grounds.

### II. FACTS AND PROCEEDINGS

The facts are undisputed. Barbara Hart visited Dr. Sam McConkey, an opthamologist, on October 10, 1990, for an eye exam. Dr. McConkey's diagnosis was that Hart had a condition known as macular degeneration in her left eye; he performed laser surgery on the eye on November 14, 1990. Hart's eye was damaged. Dr. McConkey has since admitted negligence both in diagnosing her condition and in performing the surgery.

Hart telephoned McConkey at some point in March 1992, telling him that she considered him responsible for damage to her eye and that if he did not compensate her she would bring suit. McConkey asked her to come to his office. On March 24, 1992, Hart and her husband visited McConkey to discuss the matter. McConkey wrote a note in his file:

3/24/92  Pt. & husband in to see re: phone call if not compensated will sue re: laser Rx OS.

Pt. says Dr De R. told her no leaks existed

She says he had to do more laser to stop hemorrhage

Pt. holds me response for ultimate outcome & says she will seek attorney.

On September 11, 1992, Hart's attorney wrote McConkey:

I represent Barbara Hart ... in connection with injuries she sustained as a result of a laser procedure that was initiated by you on her in November of 1990. As a result of our investigation in this matter, it appears that the complications she has sustained, and the permanent damage to her vision, is as a result of negligence on your part in that laser procedure.

After asking for information relating to McConkey's medical malpractice carrier, the letter concluded: "It is necessary that some agreement for handling this claim be reached as soon as possible if the filing of a lawsuit is to be avoided."

Hart filed a medical malpractice suit against McConkey. On January 10, 1995, McConkey made an offer of judgment of $100,000, including costs, interest, and attorney's fees. Hart did not accept the offer, and the case went to trial on damages.

After the trial, the jury returned a verdict of $69,592 against McConkey. This figure broke down as follows:

| | |
|---|---|
| Past economic loss | $ 5,592 |
| Past non-economic loss | $ 2,000 |
| Future economic loss | $15,000 |
| Future non-economic loss | $47,000 |
| Total: | $69,592 |

At the stipulation of the parties, the future economic and non-economic losses were not discounted to present value.[1]

On April 14, 1995, the trial court entered judgment awarding Hart $69,592 plus prejudgment interest on the entire award accruing from March 24, 1992, the date Hart met with McConkey in his offices. This prejudgment interest amounted to $21,041.02. The court also awarded attorney's fees of $11,563 and costs of $6,988.51, for a total judgment of $109,184.53.

Because the final judgment was greater than Dr. McConkey's offer of $100,000, the court denied McConkey's motion for application of Civil Rule 68. These appeals were then taken.

### III. STANDARD OF REVIEW

■ Questions of the application and constitutionality of the prejudgment interest statute and questions of the application of Civil Rule 68 are questions of law subject to this court's independent judgment. *Tookalook Sales and Serv. v. McGahan*, 846 P.2d 127, 129 (Alaska 1993); *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

### IV. DISCUSSION

#### A. Prejudgment Interest

#### 1. From what date should interest have accrued?

Alaska Statute 09.30.070(b) governs the accrual of prejudgment interest in this case:

> Except when the court finds that the parties have agreed otherwise, prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim

may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.

The superior court calculated interest from March 24, 1992, the date Hart met with McConkey in his offices to follow up her telephone call. Following this meeting, but on the same day, McConkey made a note in his chart indicating that Hart considered him responsible for her eye problems, that she would sue if she were not compensated, and that she would seek an attorney.

McConkey argues on appeal that prejudgment interest should not accrue until he received the September 11 letter from Hart's attorney threatening the lawsuit. Hart maintains that the superior court's calculation was correct, and that McConkey's written note to himself in Hart's file indicating that Hart "holds [him] responsible" and "will seek [an] attorney" constitutes receipt of written notice to McConkey under AS 09.30.070(b).

■ We have held that a statutory requirement of written notice may be satisfied by proof of actual notice. *See In re Estate of Evans*, 901 P.2d 1138, 1142 & n. 3 (Alaska 1995); *Morkunas v. Anchorage Tel. Util.*, 754 P.2d 1117, 1120 (Alaska 1988); *In the Matter of L.A.M.*, 727 P.2d 1057, 1061 (Alaska 1986). We adhere to these decisions in this case. The statute provides for prejudgment interest accrual upon notice to the defendant of the claim; the requirement that the notice be written assures proof that notice was received and of the date when notice was received. In this case, the written note

---

1. The parties stipulated that they would follow the rule of *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967). *Beaulieu* held that the trial court in a tort case did not err by failing to reduce future wage losses to present value. *Id.* at 670–72. It held that the uncertainties inherent in investment of a present lump sum did not allow one to guarantee that the returns on the investment of that money would exceed the rate of inflation. *Id.* at 671. This, coupled with a concern that future wage increases would not be factored into a present value for future economic

losses, led the court to reject the majority view that future damage awards should be discounted. *Id.*

While AS 09.17.040(b) now requires a fact finder to reduce future economic damages to present value, subsection .040(c) provides that the requirement "does not apply to future economic damages if the parties agree that the award of future damages may be computed under the rule adopted in the case of *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967)."

in the file provides reliable proof of notice and when it was given. McConkey does not deny that the content, as distinct from the form, of the notice he received on March 24, 1992, satisfied the statute.

The superior court did not err in holding that interest accrued from the date of actual notice, March 24, 1992.

### 2. *Was prejudgment interest on the future losses proper?*

■ The purpose of awarding prejudgment interest to a plaintiff is to make a plaintiff whole by compensating her for the use of money rightfully hers between the time of the injury and the trial. *See, e.g., State v. Phillips,* 470 P.2d 266, 274 (Alaska 1970) ("All damages then, whether liquidated or unliquidated, pecuniary or nonpecuniary, should carry interest from the time the cause of action accrues, unless for some reason peculiar to an individual case such an award of interest would do an injustice."); *Bevins v. Peoples Bank & Trust Co.,* 671 P.2d 875, 881 (Alaska 1983). Alaska Statute 09.30.070(b) modifies this rule by providing that the starting date for prejudgment interest on certain tort judgments shall be the date on which the defendant receives written notice that a claim may be brought, or the date on which process is served, whichever is earlier.

McConkey argues that the award of prejudgment interest on a nondiscounted award of future damages constitutes an impermissible double recovery. *See Sebring v. Colver,* 649 P.2d 932, 936 (Alaska 1982); *Farnsworth v. Steiner,* 638 P.2d 181, 184 (Alaska 1981); *Haskins v. Shelden,* 558 P.2d 487, 494–95 (Alaska 1976). Hart responds that there was no double recovery and that the award of prejudgment interest was therefore appropriate.

Both sides frame the issue as if it turns on their decision to follow the *Beaulieu* rule and not discount future damages. The discounting issue is, however, only secondary. The key to the case lies in the legislative requirement that tort awards be split into past and future components from the time of trial.

As part of the 1986 Tort Reform Act the legislature enacted AS 09.17.040. *See* ch.

139, § 1, SLA 1986. Subsection (a) requires that jury verdicts in personal injury cases be itemized into past economic loss, past noneconomic loss, future economic loss, future noneconomic loss, and punitive damages. Subsections (b) and (c) require that future losses be discounted unless the parties agree otherwise.

In *Navistar International Transportation Corp. v. Pleasant,* 887 P.2d 951 (Alaska 1994), we discussed the significance of the point back to which an award is discounted. We held that, where an award of future damages is discounted to the time of trial and not to the time of the injury, then prejudgment interest is inappropriate:

> [T]he assumption in the *Phillips* hypothetical [illustrating the use of prejudgment interest to allow similar compensation for otherwise identical victims who go to trial at different times] does not take into account cases in which a future stream of income is discounted not to the time of injury (or the time of accrual of prejudgment interest) but to the time of trial. If future damages were discounted back to the time of injury, it would be appropriate to allow prejudgment interest on future damages so discounted. It is, however, a double recovery to permit prejudgment interest on future sums which are discounted only to the time of trial, for such sums are greater than they would be if they were discounted to the time of injury—a difference attributable to the interaction of the discount rate and the intervening period.

*Id.* at 959–60 (citing *Phillips,* 470 P.2d at 274).

In *Navistar* we also alluded to an "ideal system" in which

> a trial could be conducted immediately following the injury at which time all of the plaintiff's claims could be valued and a judgment entered. The judgment, of course, would bear interest until it was paid. Since the ideal of instant adjudication cannot be met, and money is worth less the later it is received, it is ordinarily unjust not to award prejudgment interest between the time of the accident and the adjudication.

*Id.* at 959. The assumption on which this discussion is based is that damages will be calculated as of the time of the plaintiff's injury. "Indeed, as a plaintiff has 'a right to be made whole immediately upon being injured,' nearly all damages at that point are future damages." *Id.*[2]

█ The legislature has essentially precluded the uniform application of the assumption on which the foregoing discussion is based by requiring awards to be itemized into past and present categories, clearly using the time of trial as a reference point. AS 09.17.040(a). An award of future damages by definition contains no element of economic or noneconomic loss suffered before the trial. There is therefore no reason to discount such a future award to any time before trial. If it *were* discounted to a time before trial, then prejudgment interest would be appropriate to make up for the exaggerated discount, as *Navistar* held. But because the award is for future damages prospective *from* the time of trial, the award should only be discounted *to* the time of trial.[3]

█ "The real question in awarding interest to a judgment creditor is whether the debtor has had use of money for a period of time when the creditor was actually entitled to it." *Farnsworth,* 638 P.2d at 184. As noted, one can imagine a system under which the tort victim would be "entitled to" a single sum which would make her whole immediately upon her injury. This amount could later be determined at trial, with prejudgment interest awarded to account for the loss of use of the money between injury and trial. Alaska Statute 09.17.040(a) compels a bifurcation of the award, however, into damages incurred before the trial and damages to be

incurred after the trial. In a very real sense, then, before the trial the tort victim is only "entitled" to the damages found to have been incurred before the trial. Thus, prejudgment interest should be awarded only as to the past damages. It should not be awarded as to any future damages, discounted or nondiscounted, except as to future damages which were discounted to a date earlier than the date of trial.

This holding is consistent with *Sebring v. Colver,* 649 P.2d 932 (Alaska 1982). There, we inferred that one part of a damage award had been for repair expenses already incurred, and another had been for expenses yet to be incurred:

> We now turn to whether prejudgment interest should be granted on that portion of the jury verdict awarded to compensate the Colvers for future repairs.... [W]e conclude that the probable basis for the jury award was the estimated cost of repairs at the time of trial. Since the financial impact of the passage of time was thus incorporated into the jury's damage award, any award of prejudgment interest on this amount would therefore constitute a double recovery.

*Id.* at 936. Since the jury made its award for future damages from the perspective of the trial date and not of the date of the injury, prejudgment interest was held inappropriate. *Cf. Haskins,* 558 P.2d at 495 (holding prejudgment interest inappropriate on punitive damage award where jury likely assessed punitive damages defendant should pay at time of trial, not at time of injury).

█ Hart may have received a windfall under the agreement not to discount the future damages. By investing her award,

**2.** A footnote in *Navistar* also stated:

At one time it was thought appropriate to distinguish between compensating a plaintiff "for the loss of time from his work which has actually occurred up to the time of trial" and compensating him "for the time he will lose in [the] future." This suggested that estimated future earning capacity should be discounted to the date of trial, and a separate calculation should be performed for the estimated loss of earnings between injury and trial. It is both easier and more precise to discount the entire lost stream of earnings back to the date of injury—the moment from which earning ca-

pacity was impaired. The plaintiff may then be awarded interest on that discounted sum for the period between injury and judgment, in order to ensure that the award when invested will still be able to replicate the lost stream. 887 P.2d at 959 n.12 (quoting *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 538 n. 22, 103 S.Ct. 2541, 2551 n. 22, 76 L.Ed.2d 768 (1983)) (internal citations omitted).

**3.** AS 09.17.040(a) thus returns us to the system "at one time ... thought appropriate" as described in *Navistar,* 887 P.2d at 959 n. 12. *See supra* note 2.

her likely ultimate compensation may be significantly greater than her actual losses. But it makes no difference to the prejudgment interest analysis whether the future award was discounted or not. Under AS 09.17.040(a), the losses at issue were future losses and Hart had no claim on the money before the trial. Future damage awards should receive prejudgment interest only where they are discounted to a time before trial, in order to give the award the effect of being discounted to the time of trial. Here, the parties chose not to discount future damages; this does not change the fact that they were awarded as future damages.

We reverse and remand on this issue.[4]

### 3. Did the court err in denying McConkey's Rule 68 motion?

Alaska Civil Rule 68 provides in relation to unaccepted settlement offers:

(b) If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest accrued up to the date of judgment is entered shall be adjusted as follows:

(1) if the offeree is the party making the claim, the interest rate will be reduced by [5%] and the offeree must pay the costs and attorney's fees incurred after the making of the offer (as would be calculated under Civil Rules 79 and 82 if the offeror were the prevailing party). The offeree may not be awarded costs of attorney's fees incurred after the making of the offer.

The trial court denied McConkey's motion in light of an estimated judgment in excess of $100,000, the amount of the offer. The final judgment was for $109,184.53. In light of the trial court's error in calculating prejudgment interest, however, the final judgment should have been for an amount less than $100,000, and Rule 68 should have been applied.[5]

### B. Constitutionality of AS 09.30.070(b)

Hart's cross-appeal challenges the constitutionality of AS 09.30.070(b).[6] She makes due process and equal protection arguments, essentially asserting that the statute creates an impermissible classification with no rational basis.

We assume, for purposes of this argument only, that Hart's interpretation of AS 09.30.070(b) is correct. Hart adopts, and McConkey accepts, a reading of the statute that limits the accrual of prejudgment interest to the earlier of notice or service only in cases involving personal injury, death, and damage to property, while preserving the right to prejudgment interest from the time of injury in other tort cases, such as legal malpractice or defamation.[7] But see Shaw v. State, Dep't of Admin., 861 P.2d 566, 569 (Alaska 1993) (applying statute in legal malpractice case to calculate prejudgment interest from date of service of process).

■ As Hart points out in her briefs, this court uses the following test for an equal

---

**4.** We recognize that this holding may be facially inconsistent with some language of *Hertz v. Berzanske*, 704 P.2d 767 (Alaska 1985). There, after reversing a superior court's refusal to set aside a judgment, we wrote:

Finally, Hertz maintained on appeal that the superior court erred by awarding prejudgment interest on Pierce's damage award for lost future earning capacity. We wish to state at this time that the superior court's award was proper under *State v. Phillips*, 470 P.2d 266 (Alaska 1970).

*Id.* at 773 n. 9. However, that opinion was decided before the enactment of AS 09.17.040(a) in 1986. Under *Phillips*, we considered damages "future" from the date of injury and did not separate damages as past and future from the time of trial. Thus the reasoning of *Hertz* was correct as the law then stood, even though a

different result obtains today under the current statute.

**5.** That is, although the jury award remains unchanged at $69,592, the prejudgment interest should have only run upon the past portion of that award, and the attorney's fees awarded upon that sum under Rule 82 would have been lower.

We are unable to calculate the final judgment due because under Rule 68 McConkey is entitled to attorney's fees and costs accruing after the offer. The trial court will need to determine this.

**6.** See Part IV.A.1 above for the text of the statute.

**7.** To accomplish this reading, the phrase "for personal injury, death, or damage to property" in the second sentence of subsection .070(b) would have to be applied to the first sentence as well.

protection challenge to a statute's classification: [8]

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so. that all persons similarly circumstanced shall be treated alike."

*Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976) (citing *State v. Wylie,* 516 P.2d 142, 145 (Alaska 1973)).

Alaska Statute 09.30.070(b) was enacted as part of the 1986 Tort Reform Act. Ch. 139, § 3, SLA 1986. The Senate offered a statement of findings and purpose for the Act. We thus need not hypothesize legitimate justifications for the statute, since they are provided for us:

> * Section 1. FINDINGS AND PURPOSE. (a) Tort law in this state has generally been developed by the courts on a case-by-case basis. While this process has resulted in some significant changes in the law, *including amelioration of the harshness of* many common law doctrines, the legislature has periodically intervened in order to bring about needed reforms. The purpose of this Act is to enact further reforms in order to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance.
>
>  . . . .
>
> (c) The legislature also finds comparable cost increases in professional liability insurance. Escalating malpractice insurance premiums discourage physicians and other health care providers from initiating or continuing their practice or offering needed services to the public and contribute to the rising costs of consumer health care. Other professionals, such as architects and engineers, face similar difficult choices, financial instability, and unlimited risk in providing services to the public.
>
>  . . . .
>
> (e) It is the intent of the legislature to reduce costs associated with the tort system, while ensuring that adequate and appropriate compensation for persons injured through the fault of others is available.

Senate Findings and Purpose, C.C.S. S.B. 377, 14th Leg., 2nd Sess. (1986) (available in Conference Committee files).

The Senate findings directly address the rising costs of medical malpractice insurance and the disincentives those costs create for health care providers. In this medical malpractice case, then, the argument that there is no rational basis for the statute is unconvincing. Reducing health care costs and encouraging the provision of health care services are legitimate goals which can reasonably be thought to be furthered by lowering the amount of medical malpractice judgments. There is thus no merit to Hart's constitutional argument, even assuming her interpretation of the statute is correct.

## V. CONCLUSION

The superior court did not err in calculating prejudgment interest from the date of the meeting in McConkey's office, when McConkey had actual notice. However, the superior court erred in awarding prejudgment interest on future damages. Consequently, it also erred in denying McConkey's motion for application of Civil Rule 68. The superior court's judgment is REVERSED and REMANDED for recalculation of the award.

The cross-appeal on equal protection grounds has no merit, since the statute has a clearly stated and rational legislative purpose in so far as it applies to medical malpractice claims.

---

8. Hart does not argue that any test other than a rational basis test should apply.