**MARATHON OIL COMPANY, Appellant,**

v.

**ARCO ALASKA, INC., Appellee.**

No. S–7837.

Supreme Court of Alaska.

Jan. 22, 1999.

---

Maureen J. Bright, Bright & Brown, Glendale, California, and Daniel T. Quinn, Richmond & Quinn, Anchorage, for Appellant.

Phillip J. Eide, Eide & Miller, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE and BRYNER, Justices.

## OPINION

FABE, Justice.

### I. INTRODUCTION

Marathon Oil Company appeals the superior court's decision upholding an arbitration award and granting ARCO Alaska, Inc. eighty percent of the attorney's fees it incurred in defending the award. Marathon argues that we should correct or vacate the award pursuant to AS 09.43.120(a) because (i) the arbitrators exceeded their powers by re-

versing a portion of the liability decision; (ii) the arbitrators conducted the proceedings in a prejudicial manner by failing to hold a hearing examining their power to reverse; (iii) the arbitrators were estopped from changing the liability decision; and (iv) ARCO is estopped from contesting the relief Marathon seeks. Marathon also contends that the arbitration agreement did not permit an award of attorney's fees, and that even if some fees were allowed, enhanced fees were inappropriate.

We affirm the superior court's decision to uphold the arbitration award and its ruling that the arbitration agreement permitted recovery of attorney's fees in an action seeking to vacate or correct the award. But because the court abused its discretion in awarding enhanced fees based in part on the "unreasonableness" of Marathon's arguments, we remand for a redetermination of attorney's fees under Alaska Civil Rule 82.

## II. FACTS AND PROCEEDINGS

In 1966 Marathon entered into a Gas Rental Agreement to supply natural gas to the Swanson River Field, an oil field on the Kenai Peninsula. Marathon's gas was "rented" because the agreement provided that the operator of the field would return the gas at the end of the field's life. The rental agreement referred to the event of returning the gas as "blow down."

Although Chevron initially operated the field, ARCO had become the field operator by 1983. In the late 1980s, Marathon began to oppose further delivery of rental gas to the Swanson River Field. It claimed that, because the market value of rental gas had increased since 1966, it was unprofitable for it to continue to provide the gas at the price negotiated in the rental agreement. ARCO objected to Marathon's attempts to cease delivery.

The rental agreement contained a clause permitting Marathon to terminate gas delivery if the lessee did not take a daily average quantity of 10 MCF (million cubic feet) of gas in any twelve-month period. In November 1991 Marathon sent ARCO a letter stating that it was exercising its right to terminate based on ARCO's failure to take the minimum quantity of gas from August 1, 1990 to July 31, 1991. ARCO objected to the threatened termination, claiming that it had taken the required daily average of gas and that even if it had not, it was Marathon's fault for delivering insufficient quantities. Under protest, Marathon continued to supply gas to ARCO but claimed that it was entitled to the fair market value of the gas delivered. Marathon stopped delivering gas to the oil field in December 1992, when UNOCAL became the field operator.

Marathon and ARCO could not resolve their dispute over the proper price for the gas and decided to submit the dispute to arbitration. The parties executed an arbitration agreement that described the dispute as "[t]he price and/or other consideration due to Marathon for rental gas delivered for the period 12/18/91 to 12/15/92 (including the related issue of whether or not the gas delivered during this period was actually required to be delivered pursuant to the Natural Gas Rental Agreement)." The agreement required the arbitrators to apply Alaska law and stated that the "decision of a majority of the arbitrators shall be binding upon the parties with respect to all decisions to be made under this arbitration agreement."

Although the parties had initially agreed to resolve issues of liability and damages in a single hearing, the arbitrators bifurcated the proceedings in order to accommodate Marathon's request for a continuance to prepare its damages experts. At the liability hearing, the first phase of the proceedings, the arbitrators ruled in Marathon's favor. They found that Marathon had the right to terminate the rental gas deliveries based on ARCO's failure to take sufficient amounts of gas. The panel then proceeded to give the parties guidance on the measure of damages. It ruled: "ARCO is required (i) to pay Marathon the [fair market rental value] of all Rental Gas delivered by Marathon to ARCO at the [Swanson River Field] commencing on December 19, 1991, less the amount actually paid to date by ARCO to Marathon for such Rental Gas ... and (ii) to return all such returnable Rental Gas to Marathon as if it had been delivered pursuant to the terms and conditions of the Agreement."

During the damages hearing, the parties presented evidence regarding the fair market rental value of the gas, which totaled 1 BCF (billion cubic feet). Despite the arbitrators' ruling on summary judgment that the gas must be considered rented rather than sold, Marathon argued that the measure of damages should be the sale price of the gas, approximately $1.4 million. Marathon justified its damages request by claiming that the rental value was equivalent to the sales value in this case because ARCO could not return the gas now that UNOCAL had become the field operator. To support its position, Marathon introduced two documents that were unavailable to the panel during the liability phase: the ARCO/UNOCAL exchange agreement, effective December 15, 1992; and the Marathon/UNOCAL exchange agreement, effective December 1, 1994. Pursuant to the first of these agreements, UNOCAL replaced ARCO as the operator of the Swanson River Field. In the second agreement, Marathon conveyed to UNOCAL all of its interest in the returnable gas that it had delivered to the field, except for 73 BCF of such gas.

The arbitrators rejected Marathon's arguments that the measure of damages should be the sale price and awarded it the fair market rental value of the gas, $407,026. In light of the ARCO/UNOCAL exchange agreement, they concluded that UNOCAL had the legal responsibility to return the 1 BCF of gas as the field operator. As a result, the arbitrators ruled that although the liability decision identified ARCO as the party responsible for returning the gas, that responsibility had shifted to UNOCAL when it became field operator. The panel concluded, as a matter of fact, that the field contained sufficient gas to ensure that Marathon would receive all the rental gas due. Further, the arbitrators found that no evidence had been presented to suggest that UNOCAL would shirk its obligations as field operator and thus fail to return the gas to Marathon during blow down. In fact, they noted that UNOCAL had commenced blow down in late 1993. The arbitrators also stated that whether or not Marathon had contracted away its right to receive the 1 BCF of gas from UNOCAL in its exchange agreement was irrelevant to the outcome of the arbitration.

After the arbitrators issued the damages decision, Marathon requested that the ruling be corrected to provide that ARCO, not UNOCAL, would be responsible for returning the rental gas. As well as asking the arbitrators to reconsider their interpretations of relevant agreements, Marathon argued that the law of the case required them to conform the damages decision to the liability decision, which specified that ARCO was to return the gas.

The arbitrators refused to correct the damages decision. They noted first that, pursuant to AS 09.43.090, they had no power to reconsider the merits of a final decision and could only clarify their prior ruling. The panel explained that the reference in the liability decision to ARCO's obligation to return the gas was based on a limited record that did not include the agreements Marathon and ARCO had entered into with UNOCAL. The arbitrators clarified that the liability ruling was intended only to acknowledge that the field operator at the time of blow down would have the responsibility of returning the rental gas. The arbitrators also ruled that, because they had ordered bifurcation merely to accommodate the parties, the liability decision was interlocutory, and therefore, they had a right to revise it upon hearing further evidence at the damages phase. The dissenting arbitrator disagreed with the majority's characterization of the liability decision as interlocutory and argued that the arbitrators were bound by their initial ruling that ARCO was responsible for returning the gas.

After the arbitrators issued the final award, Marathon filed a motion in the superior court pursuant to AS 09.43.120(a) requesting the court either to correct the damages decision to provide that ARCO was responsible for returning the gas or vacate the award altogether. The superior court denied Marathon's motion without explanation. It then granted ARCO's motion for attorney's fees and awarded ARCO eighty percent of the fees it incurred in defending the arbitrators' decision. Marathon appeals, arguing that

the superior court erred both in denying its motion to correct or vacate the damages award and in awarding enhanced attorney's fees to ARCO.

## III. *DISCUSSION*

### A. *Standard of Review*

 Whether the arbitrators' actions violated AS 09.43.120(a) [1] is a question of law. *See Ahtna, Inc. v. Ebasco Constructors, Inc.,* 894 P.2d 657, 660 (Alaska 1995). We therefore review the superior court's decision to affirm the arbitration award de novo. *See id.* The court's ruling that the arbitration agreement permitted an attorney's fees award is also reviewed under the de novo standard because it involves contract interpretation. *See State v. Arbuckle,* 941 P.2d 181, 184 (Alaska 1997). We review the decision to award enhanced fees, however, under the abuse of discretion standard. *See Sweet v. Sisters of Providence,* 895 P.2d 484, 497 n. 15 (Alaska 1995).

### B. *Did the Arbitrators Exceed Their Powers under the Arbitration Agreement?*

#### 1. *Standard of review*

 Determining whether the arbitrators exceeded their powers by revising a portion of the liability decision, thus violating AS 09.43.120(a)(3), requires us to review their interpretation of the arbitration agreement. *See University of Alaska v. Modern Constr., Inc.,* 522 P.2d 1132, 1137 (Alaska 1974) ("The powers of arbitrators are confined to those conferred upon them by the arbitration agreement, subject, of course, to further limitations imposed by the law of the jurisdiction.") (footnote omitted). We have considered arbitrators' interpretations of ar-

bitration agreements only in the context of reviewing their decisions on arbitrability. *See, e.g., Public Safety Emp. Ass'n Local 92 v. State,* 895 P.2d 980, 984 (Alaska 1995). "When arbitrability is the issue, the standard of review concerning questions of law is whether the arbitrator's conclusion is reasonably possible." *Id.* Recognizing that the issue posed in this case is not one of arbitrability, Marathon argues that we should apply a de novo standard, rather than the reasonably possible standard, in reviewing the arbitrators' interpretation of their powers.

Marathon first argues that a de novo standard is appropriate because the arbitrators never in fact interpreted the agreement. We disagree. Although the arbitrators may not have used the words "we interpret the agreement," their analysis of why they could revise the first decision was based on their understanding of the agreement, the parties' intent, and extrinsic evidence. The arbitrators stated that they viewed the first decision as interlocutory because the bifurcation occurred only to accommodate Marathon's request for a continuance. They reasoned that in such circumstances, in contrast to a situation in which the parties had a right to bifurcated proceedings, the liability decision was not final. Thus, the arbitrators implicitly concluded that the liability decision did not qualify as "binding" within the meaning of the arbitration agreement.

 Marathon next claims that we should apply a de novo standard because the arbitrators did not have the power to interpret the agreement. It argues that the arbitrators lacked this power because only one issue was submitted to them for resolution. The fact that the parties submitted a single dispute to the arbitrators, however, has no

---

**1.** AS 09.43.120(a) provides:

 (a) On application of a party, the court shall vacate an award if

 (1) the award was procured by fraud or other undue means;

 (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of a party;

 (3) the arbitrators exceeded their powers;

 (4) the arbitrators refused to postpone the hearing upon sufficient cause being shown for

postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of AS 09.43.050, as to prejudice substantially the rights of a party; or

 (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under AS 09.43.020 and the party did not participate in the arbitration hearing without raising the objection.

logical connection to whether or not the arbitrators had the power to interpret the arbitration agreement. Absent the ability to construe arbitration agreements, arbitrators would be precluded from acting during hearings because the agreements are the source of their powers.

■ Marathon also contends that a de novo standard of review is appropriate because the arbitration agreement contained a choice-of-law clause. However, Marathon's reliance on our decision in *Public Safety* to support its position is misplaced. In *Public Safety*, we reviewed the arbitrators' interpretation of applicable law because the award at issue was the result of compulsory arbitration. *See Public Safety*, 895 P.2d at 984; *see also Butler v. Dunlap*, 931 P.2d 1036, 1039 (Alaska 1997). Awards stemming from compulsory arbitration are reviewed under the arbitrary and capricious standard, which we ruled was violated in *Public Safety* because the arbitrator had ignored the law. *See Public Safety*, 895 P.2d at 984–85. The opinion does not stand for the proposition that Alaska courts can review arbitrators' legal conclusions de novo whenever an arbitration agreement contains a choice-of-law clause.

We conclude that Marathon's arguments in favor of a de novo standard of review are unpersuasive. Instead, because determining arbitrability requires interpretation of an arbitration agreement, it is logical to review arbitrators' interpretations of other aspects of the agreement under the same standard that we use to review their decisions on arbitrability. We therefore review the arbitrators' decision that the agreement permitted them to revise the liability ruling under the reasonably possible standard.

2. *Did the arbitrators interpret the agreement reasonably when they decided that they could revise the liability decision?*

■ Relying on the agreement's provision stating that all decisions would be binding, Marathon argues that the arbitrators did not have the power to reverse the liability decision and absolve ARCO of the personal responsibility for returning the gas. Marathon therefore urges this court to vacate or correct the damages award under AS 09.43.120(a)(3).

In arguing that the arbitrators exceeded their power by revising the liability ruling, Marathon assumes that the ruling conclusively determined how the gas was to be returned. In fact, as the arbitrators stated in their decision denying Marathon's motion to correct the damages ruling, the liability hearing did not address this issue. Instead, the hearing focused on determining whether Marathon had a right to terminate gas delivery under the 1966 agreement based on ARCO's failure to take the minimum daily average of gas. To make this determination, the panel considered issues such as whether Marathon had delivered sufficient quantities of gas and whether ARCO was legally excused from taking the minimum required under the contract.

In contrast, determining whether ARCO or the field operator was personally responsible for returning the gas required the arbitrators to interpret the ARCO/UNOCAL exchange agreement in relation to the 1966 gas rental agreement. The effect of these agreements on gas re-delivery was not at issue during the liability hearing; instead, the arbitrators addressed this issue only during the damages phase. Although Marathon interpreted the exchange agreement as placing the burden of gas return on ARCO's shoulders, ARCO argued that the burden belonged to the current field operator, UNOCAL. The arbitrators adopted ARCO's interpretation of the agreements rather than Marathon's and therefore ruled that ARCO was not personally responsible for returning the rental gas.

Because the liability hearing did not consider how the gas would be delivered, the decision could not have represented a conclusive determination that ARCO was personally obligated to deliver it. We therefore disagree with Marathon's premise that the arbitrators reversed a final decision when they stated in the damages phase that ARCO was not personally responsible for returning the gas.

■ But even if the liability decision had determined who was to return the gas, we

reject Marathon's claim that the arbitrators acted unreasonably in interpreting the agreement to permit them to revise this decision. It is true that if parties agree that a partial decision, such as a liability decision in a bifurcated proceeding, will be final, then the arbitrators have no authority to change that "partial final" decision once it is issued. *Trade & Transp. v. Natural Petro. Charterers,* 931 F.2d 191, 195 (2d Cir.1991); *see also International Bhd. of Elec. Workers, Local Union 1547 v. City of Ketchikan,* 805 P.2d 340, 343 n. 7 (Alaska 1991) ("It is a fundamental common law principle that once an arbitrator has made and published a final award, the arbitrator's authority is exhausted and he or she can proceed no further."). Additionally, one court has held that even if the parties have not explicitly agreed to the finality of a liability decision, the decision should be considered final if the record suggests that the parties and panel believed that it would be final, and the arbitrators resolved all issues presented to them. *See McGregor Van De Moere, Inc. v. Paychex, Inc.,* 927 F.Supp. 616, 618 (W.D.N.Y.1996).

The record in this case, however, provides no substantial evidence showing that the parties believed that the liability decision would be final. Importantly, neither of the parties in this case requested bifurcation. Instead, Marathon filed a motion requesting the arbitrators to postpone the *single* hearing scheduled. ARCO objected to this motion, stressing the need for speedy resolution of the dispute. In an attempt to accommodate both parties and to give Marathon more time to prepare its damages experts, the arbitrators postponed the damages portion of the hearing. Thus, the arbitrators divided the single hearing into two phases merely as a scheduling convenience; the division was not a response to the merits of the case.

In the damages decision, the arbitrators clarified that the current field operator, rather than ARCO, would be liable for returning the gas because they concluded that "justice so require[d]." Contrary to Marathon's assertions, they interpreted the relevant contracts to place the duty of gas return on the field operator's shoulders rather than ARCO's. Although recognizing that the lia-

bility decision stated that ARCO would have to return the gas, they concluded that it would be unfair to hold ARCO personally responsible for return based on this statement, *because the liability phase did not concern this issue.* Given these circumstances, we rule that the arbitrators interpreted the arbitration agreement reasonably when they concluded that they could revise the liability decision in the interest of justice.

## C. Did the Arbitrators Conduct the Arbitration in a Way That Prejudiced Marathon?

### 1. *Standard of review*

■ Marathon contends that we should vacate or correct the damages award under AS 09.43.120(a)(4) because the arbitrators did not grant it the opportunity to be heard on the issue of revising the liability decision. Alaska Statute 09.43.120(a)(4) provides that an arbitration award may be vacated when "the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement *or . . . so conducted the hearing . . . as to prejudice substantially the rights of a party* [.]" (Emphasis added.) This court has held that in order to vacate a damages award based on the arbitrators' refusal to continue the arbitration hearing, a litigant must show that the "arbitrators committed gross error" in determining that a "litigant did not show 'sufficient cause' for postponement." *Ebasco Constructors, Inc. v. Ahtna, Inc.,* 932 P.2d 1312, 1316 (Alaska 1997).

Because AS 09.43.120(a)(4) deals generally with issues concerning the management of the arbitration, it is logical to adopt the same standard of review for all alleged violations of this provision. Therefore, we must decide whether the arbitrators' failure to grant Marathon a hearing constituted gross error.

### 2. *Did the arbitrators commit gross error by failing to hold a hearing examining their powers to revise the liability decision?*

■ Marathon claims that it was unfair for the arbitrators to revise the liability decision without first giving the parties notice of

the impending revision and an opportunity to be heard. The arbitration agreement, however, granted the panel leeway in matters of procedure, permitting it to conduct the arbitration hearing "in such manner as it deem[ed] appropriate." In the circumstances of this case, we conclude that the arbitrators could have appropriately decided that notice and a hearing were unnecessary because the liability phase had not addressed the issue of gas delivery. There would have been little reason for the arbitrators to give notice that they were revising their views on an issue *that the parties knew or reasonably should have known had not been conclusively litigated.*

Marathon's claim that it was prejudiced by the arbitrators' revision of the liability decision assumes that it acted reasonably in relying on the decision as conclusively determining issues of gas delivery. Such reliance would have been unjustifiable, however, given that the liability phase did not address these issues.

D. *Were the Arbitrators Estopped from Ruling in the Damages Phase That UNOCAL Was Responsible for Returning the Gas?*

██ Marathon also argues that the doctrine of estoppel invalidates the arbitrators' decision in the damages phase that UNOCAL, rather than ARCO, was responsible for returning the gas. This argument is without merit.

The doctrine of estoppel is not the correct framework for analyzing the arbitrators' actions. Even if the arbitrators' decision in the damages phase constituted a reversal of a portion of their liability decision, the question of whether or not the reversal was appropriate can be answered only by interpreting the arbitration agreement. It is the power of the arbitrators pursuant to the agreement that is the issue; the doctrine of estoppel is irrelevant.

██ Moreover, the cases cited by Marathon do not support its claim that arbitrators can be estopped. The cases it relies upon state that a municipality can be estopped, not a judicial body. *See, e.g., Municipality of*

*Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984). As ARCO argues, any contention that a judicial body, such as a court, can be estopped from reversing its decisions is meritless.

E. *Is ARCO Estopped from Contesting the Relief Marathon Seeks Here?*

Marathon next argues that ARCO should be estopped from opposing Marathon's motion to vacate or correct the damages award. Marathon's estoppel argument boils down to two claims: (i) in its negotiations with UNOCAL, ARCO agreed that it would retain the liability for returning the gas and thus should be estopped from now arguing that UNOCAL had the responsibility of return; and (ii) because ARCO did not contest the liability decision and agreed that all decisions would be binding in the arbitration agreement, it should be estopped from challenging the finality of the liability decision.

██ ARCO is correct that an estoppel analysis is inappropriate under the circumstances. The real issue raised by this appeal is whether the arbitrators exceeded their powers by refusing to hold ARCO personally liable for returning the gas. The positions adopted by ARCO before and during the arbitration are irrelevant.

██ Furthermore, even if an estoppel analysis were appropriate, we would still reject Marathon's contentions. Marathon's first argument must fail because it asks this court to retry the dispute resolved by the arbitrators. The arbitrators decided in the damages phase that the agreement between UNOCAL and ARCO did *not* place the obligation of returning the gas upon ARCO. Marathon was given the chance to present its interpretation of the UNOCAL/ARCO exchange agreement at the damages hearing; the arbitrators simply rejected its interpretation. This court has no statutory authority to reconsider arbitrators' construction of contract provisions that do not pertain to the issue of arbitrability. *See Ahtna, Inc. v. Ebasco Constructors, Inc.,* 894 P.2d 657, 661 (Alaska 1995).

██ Marathon's second argument, that it detrimentally relied on ARCO's conduct dur-

ing the arbitration, is also unpersuasive. Marathon asserts that, shortly after the damages trial, it entered into an agreement waiving any claims against UNOCAL to receive the BCF of gas. But ARCO argued at the damages trial that the ARCO/UNOCAL exchange agreement placed the delivery obligation on UNOCAL's shoulders, not its own. Thus, Marathon should have been on notice prior to entering into its contract with UNOCAL that ARCO disputed its personal obligation to deliver the gas. Marathon therefore has not shown reasonable reliance on ARCO's conduct.[2]

### ·F. Did the Superior Court Err in Awarding Attorney's Fees and Costs?

Marathon argues that the superior court's award of attorney's fees was improper for two reasons: (i) attorney's fees should not have been awarded at all because the arbitration agreement provided that Rule 82 did not apply to this matter; and (ii) even if Rule 82 applied, an enhanced award was unjustified because Marathon's claims were not frivolous.

#### 1. Did the arbitration agreement prohibit an award of attorney's fees in an action to vacate or correct the arbitration award?

Marathon contends that the arbitration agreement required the parties to bear their own costs and fees, even for court proceedings following the arbitration. The agreement provides: "Each party shall bear its own costs and attorney's fees. Alaska Rule of Civil Procedure 82 shall not apply to this matter." Marathon urges this court to interpret the term "matter" to include post-arbitration court proceedings and claims that its interpretation is supported by the fact that the agreement contemplates enforcement proceedings under the Uniform Arbitration Act.

■ Because the parties have not pointed to any extrinsic evidence explaining their intent in drafting the agreement, our analysis

of this issue must rely on the language of the contract. See *Fairbanks N. Star Borough v. Tundra Tours*, 719 P.2d 1020, 1024 (Alaska 1986). The contract's language cuts against Marathon's interpretation. First, as ARCO argues, the requirement that each party bear its own costs and fees appears in a paragraph that also discusses how the arbitrators will be compensated. The location of the requirement within the contract therefore suggests that the parties were referring only to the arbitration itself when they agreed to each bear their own costs. Second, Marathon is mistaken that the agreement's reference to enforcement proceedings under the Uniform Arbitration Act supports its position. The Act authorizes superior courts to award attorney's fees and costs to the prevailing party in an action to affirm or modify an arbitration award. See AS 09.43.140; *Anchorage Med. & Surgical Clinic v. James*, 555 P.2d 1320, 1324 (Alaska 1976) (interpreting AS 09.43.140), *overruled on other grounds by Ahtna v. Ebasco Constructors, Inc.*, 894 P.2d 657 (Alaska 1995). By anticipating enforcement proceedings pursuant to the Act, the parties incorporated the Act's provisions into their arbitration agreement, including AS 09.43.140. Therefore, the superior court correctly interpreted the arbitration agreement when it decided that it could award fees and costs to ARCO.

#### 2. Did the superior court abuse its discretion in deviating from the twenty percent standard of Rule 82?

■ Rule 82 provides that "[i]n cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party ... in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." The superior court deviated from this standard and awarded ARCO $18,060, or eighty percent of its actual attorney's fees. Marathon argues that the superior court abused its discretion by awarding enhanced fees.

---

**2.** See *K.E. v. J.W.*, 899 P.2d 133, 134 (Alaska 1995) (setting out the elements of equitable estoppel as "(1) representation of a position by

conduct or word, (2) reasonable reliance thereon by another party, and (3) resulting prejudice").

The superior court explained the rationale for its award as follows:

> In light of the reasonableness and necessity of the fees charged ... and the policy supporting the finality of arbitration decisions, and the amount of money at stake and effect of Rule 82 if Marathon had prevailed in this action, and *the fundamental unreasonableness of Marathon's position* it is appropriate to enhance the attorney's fees awarded.

(Emphasis added.) Although Rule 82(b)(3) permits the trial court to enhance an award of attorney's fees for a variety of reasons,[3] the court abused its discretion in relying on the "unreasonableness of Marathon's position" as a factor justifying enhancement. Marathon's challenge to the arbitration award raised a legitimate issue about the arbitrators' power under the agreement and the standard under which their interpretations of the agreement should be reviewed. Moreover, an award of substantially "full at-torney's fees is manifestly unreasonable in the absence of bad faith or vexatious conduct by the non-prevailing party." Alaska R. Civ. P. 82, note to Supreme Court Order 1118am. No such conduct occurred here. We therefore remand to the superior court for a reconsideration of the attorney's fees award, in light of its other findings under Rule 82(b)(3).

## IV. CONCLUSION

We AFFIRM the decision of the superior court declining to vacate or correct the arbitration award but REMAND for a redetermination of appropriate attorney's fees under Rule 82.

---

3. Rule 82(b)(3) provides in relevant part:

 The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

 (A) the complexity of the litigation;
 ....
 (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
 ....
 (F) the reasonableness of the claims and defenses pursued by each side;
 (G) vexatious or bad faith conduct;
 ....
 (K) other equitable factors deemed relevant.