v.

**A.C.D., and State of Alaska, Department of Revenue, Child Support Enforcement Division, Appellee and Cross–Appellant.**

Nos. S–8183/8243.

Supreme Court of Alaska.

May 28, 1999.

---

Carl J.D. Bauman, Sean P. Edwards, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, Anchorage, for Appellant and Cross–Appellee.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee and Cross–Appellant.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

MATTHEWS, Chief Justice.

## I. INTRODUCTION

This case involves a paternity disestablishment action. Although appellant (Tom)[1] is not the biological father of nine-year-old Allie, the superior court held that he is her legal father by operation of the doctrine of laches. Tom's appeal presents the question whether a parental relationship may be established by laches. The cross-appeal presented by CSED on its own behalf and on behalf of Alice, Tom's former wife and Allie's mother, challenges the court's conclusion that Allie was aware that Tom was not her biological father; CSED therefore argues that the court should have applied the doctrine of paternity by estoppel. Although the court did not err in refusing to find paternity by estoppel, we conclude that laches is an unsound basis for adjudicating legal paternity and therefore reverse.

## II. FACTS AND PROCEEDINGS

### A. Factual Background

Tom and Alice first met in February 1989 when Alice was several months pregnant. They were married one month later. Alice gave birth to Allie in June 1989. Although he was not in fact Allie's biological father, Tom was presumed to be her natural father because he was married to Alice at the time of Allie's birth. Tom's name was placed on Allie's birth certificate as her father pursuant to AS 18.50.160(d).

Tom and Alice separated in October 1993. Alice retained custody of Allie and applied for public assistance shortly after the separation. As a condition of receiving Aid to Families with Dependent Children, Alice assigned her right to collect child support to the State. In January 1994 CSED issued a support order requiring Tom to pay ongoing child support of $319 per month and estab-

lishing arrears at $1,595. Tom appealed the order and CSED issued a modified support order in June 1994 establishing Tom's ongoing support at $293 per month and arrears at $2,187.

### B. Procedural Background

On November 10, 1994, Tom filed a complaint in superior court seeking to disestablish his paternity of Allie and to terminate his duty of support. Alice admitted that Tom was not Allie's biological father, counterclaimed for divorce, and requested sole legal and physical custody of Allie. CSED opposed Tom's attempt to disestablish paternity, and stated that it would continue to collect child support from Tom until his paternity was disestablished by court order. While the parties agree that Tom is not Allie's biological father, CSED asserted that equitable estoppel and the doctrine of laches prevented Tom from denying his paternity.

Tom amended his complaint twice. First, he changed his position and sought to establish legal paternity and requested primary custody of Allie. Second, he reverted to his original request that the court enter an order disestablishing paternity and terminating his duty of support.

Both CSED and Tom moved for summary judgment. The superior court granted summary judgment to CSED. The court held that Tom had rebutted the presumption of biological fatherhood by clear and convincing evidence, and that he was not equitably estopped from denying paternity. But the court held that Tom was barred from denying paternity by the doctrine of laches. This appeal and cross-appeal followed.

## III. STANDARD OF REVIEW

This court reviews grants of summary judgment de novo to "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[2] "All factual inferences are drawn in favor of the non-moving party, and the exis-

---

1. We use pseudonyms for the names of the individual parties and their child.

2. *Beilgard v. State,* 896 P.2d 230, 233 (Alaska 1995).

tence of a dispute regarding any material fact precludes summary judgment." [3] On questions of law, we apply our independent judgment and adopt the rule of law most persuasive in light of precedent, reason, and policy.[4]

## IV. DISCUSSION

### A. The Presumption of Biological Fatherhood

As a general rule, only biological and adoptive parents are legally responsible for the welfare of their children.[5] A child born to a married woman is presumed to be the offspring of her husband.[6] The husband's name is entered on the child's birth certificate as the father unless paternity has been otherwise adjudicated or the mother, the husband, and the biological father execute affidavits as to the true state of affairs.[7] The presumption of a husband's paternity can be rebutted by clear and convincing evidence.[8]

Tom was presumed to be Allie's biological father and his name was placed on her birth certificate because he was married to Alice when Allie was born. The trial court properly concluded that Tom had rebutted the presumption of paternity since all parties agree that he is not Allie's biological father.

### B. The Constructive Parental Relationship and Legal Fatherhood

#### 1. Equitable estoppel

A man's conduct toward a child can give rise to a constructive parental relationship so that he can be adjudged the legal, although not the biological, father with a duty of support.[9] This result has been reached by invoking equitable estoppel to prevent the denial of fatherhood.[10]

Equitable estoppel has three elements: (1) a representation by word or conduct, (2) reasonable reliance on that representation, and (3) prejudice caused by the reliance.[11] In paternity disestablishment cases, the elements of representation and reasonable reliance are satisfied if

(1) the husband represented directly or implicitly to the child that he is the father, (2) the husband intended his representation to be accepted and acted on by the child, (3) the child relied on the representation and treated the husband as a father and gave his love and affection to the husband, and (4) the child was ignorant of the true facts.[12]

With respect to the third element, prejudice, we have recently narrowed the type of conduct which can qualify. In *B.E.B. v. R.L.B.*, 979 P.2d 514 (Alaska 1999), we held that the only prejudice that can be considered is the impairment of the right to obtain support from the natural father. Previously we had indicated that two other types of prejudice could be considered: "serious and lasting emotional injury from the denial of paternity," and "social injury from the

---

3. *Schumacher v. City and Borough of Yakutat*, 946 P.2d 1255, 1256 (Alaska 1997).

4. *See Great Am. Ins. Co. v. Bar Club, Inc.*, 921 P.2d 626, 627 (Alaska 1996).

5. *See H.P.A. v. S.C.A.*, 704 P.2d 205, 208 (Alaska 1985).

6. *See Smith v. Smith*, 845 P.2d 1090, 1092 (Alaska 1993).

7. *See* AS 18.50.160(d), which provides

If the mother was married at conception, during the pregnancy, or at birth, the name of the husband shall be entered on the certificate as the father of the child unless

(1) paternity has been lawfully determined otherwise by a tribunal, in which case the name of the father, if determined by a tribunal, shall be entered; or

(2) both the mother and the mother's husband execute affidavits attesting that the husband is not the father and that another man is the father, and the mother and the other man execute affidavits attesting that the other man is the father, so long as the affidavits meet the requirements of (g) of this section.

8. *See Smith*, 845 P.2d at 1092.

9. *See H.P.A.*, 704 P.2d at 208.

10. *Id.*

11. *See K.E. v. J.W.*, 899 P.2d 133, 134 (Alaska 1995).

12. *Id.* at 134–35.

removal of the status of legitimacy."[13]

■ In the instant case, the superior court held that CSED's equitable estoppel defense failed because the reliance requirement was not satisfied. Alice testified that she had told Allie that Tom was not her biological father when Allie was approximately three years old. More specifically, Alice testified that the subject arose when Allie asked about an adopted friend who had "two dads": "I explained to my daughter that Mommie was pregnant at the time, and the person that I was with at that time was not ready to be a parent, [and] that I met your dad, [Tom]. He wanted to be your daddy...."

CSED argues that this statement would not be understood by a three-year-old lacking knowledge of human reproduction and so, effectively at least, Allie remained "ignorant of the true facts." But CSED offers no factual support for its contention that Allie was unaware that Tom's fatherhood was in some way different because he was not responsible for her mother's pregnancy. The reliance standard assumes that the child has at least some rudimentary understanding of fatherhood. A child capable of understanding fatherhood to the degree necessary to establish reliance should also understand an explanation like the one which Alice gave to Allie.[14] Thus we agree with the trial court that reliance as required by our case law has been shown not to exist in the present case.

### 2. The doctrine of laches

■ The trial court found that the doctrine of laches barred Tom's complaint.

Laches is available as an equitable defense when a plaintiff unreasonably delays seeking relief and a defendant suffers prejudice as a result of the delay.[15]

■ Although Alice knows the identity of Allie's biological father and neither she nor CSED have attempted to locate him, the trial court in finding laches stated that Tom's "long delay has prejudiced the ability for CSED and [Alice] to seek out the actual biological father and hold him liable for support." In finding prejudice to Alice and CSED, the trial court made a finding which would also satisfy the economic prejudice element of equitable estoppel.

The trial court measured Tom's delay from the date of Allie's birth. Quoting *Keener*,[16] the court wrote:

"[T]he period of delay for laches begins to run when the party discovers or could have discovered the wrong of which he complains, ... or where, in light of any resulting prejudice to the defendant, it becomes reasonable to expect the plaintiff to act upon the wrong." The wrong from which [Tom] seeks redress is the fact that he was listed as the father on the birth certificate. [Tom] was aware of this wrong from the very beginning.

Tom argues that the court erred in concluding that the period of delay began at Allie's birth. He claims that he could not have sought to disestablish his paternity then without putting a burdensome strain on the new marriage and did not object to supporting Allie while he was married to and living

13. *K.E.* 899 P.2d at 135.

14. The reliance element of equitable estoppel has always had an objective as well as a subjective component, thus requiring "reasonable" reliance as well as personal or subjective reliance. *See, e.g., Usibelli Coal Mine, Inc. v. State, Dep't of Natural Resources,* 921 P.2d 1134, 1147 (Alaska 1996); *K.E. v. J.W.,* 899 P.2d 133, 134 (Alaska 1995); *Jamison v. Consolidated Utils., Inc.,* 576 P.2d 97, 101–02 (Alaska 1978). Applying an objective standard to children is difficult. In the law of negligence the reasonable person standard when applied to children is formulated in terms of what it is reasonable to expect of a child of "like age, intelligence, and experience." *Patterson v. Cushman,* 394 P.2d 657, 660 (Alaska 1964). We assume that a similar standard should apply to questions concerning the reasonableness of a child's reliance.

Because we decided *B.E.B.* after the present case already had been briefed and argued, the parties' focus on Allie's emotional reliance is understandable. Under *B.E.B.,* analysis of the reliance element arguably would shift to some degree from the child to the mother and would concentrate more on economic than on emotional considerations. However, our conclusion that CSED has failed to establish estoppel under the pre-*B.E.B.* theory it argues makes it unnecessary for us to address these issues.

15. *See Keener v. State,* 889 P.2d 1063, 1066 (Alaska 1995).

16. 889 P.2d at 1067 (citation omitted).

with Alice. He contends that it was not until CSED sought to impose a support obligation on him in January of 1994, a few months after the parties separated, that he can be charged with the duty of timely action for laches purposes. And he contends that since he contested CSED's efforts administratively and judicially in a timely manner, no basis exists for concluding that he was guilty of unreasonable delay.

We agree with Tom that to apply the delay period for laches from Allie's birth would be inappropriate. It was reasonable for Tom, in view of the parties' recent marriage, not to bring a paternity disestablishment proceeding at that point. He no doubt believed that the marriage would last and that he would support Allie during her childhood.

Tom also argues that laches has not been judicially recognized as a doctrine capable of barring a putative father from asserting non-paternity. He contends that it should not receive recognition because it expands the paternity-by-estoppel doctrine. CSED agrees as a matter of Alaska case law that laches has not been applied in cases similar to the present one. But it contends that little reason exists not to recognize the defense since it relates closely to the estoppel doctrine which we do recognize. CSED also cites two cases from other jurisdictions which have applied laches to bar a man from denying paternity.

We turn first to the cases cited by CSED. The first is *In re the Marriage of Boer.*[17] In this case the husband had strong grounds to believe the child, born in 1967, was not his since at the time of conception the parties were not cohabiting.[18] The parties reconciled one month before the birth of the child and at the time of their 1972 dissolution the husband agreed that the child was "of the marriage" and agreed to pay child support.[19]

Some years later the husband collaterally attacked the dissolution decree, contending that the child was not his.[20] The appellate court affirmed the trial court's denial of relief.[21] An alternative ground for this decision was laches: "The husband had ample opportunity to contest paternity *in the dissolution proceeding* and chose otherwise. The husband's conduct contains all the necessary elements to conclude that he is barred by laches."[22] We note that in this case the court indicated that the husband had a duty to act when dissolution proceedings were brought, not five years earlier at the birth of the child.

The second case is *Arvizu v. Fernandez.*[23] Here the husband became convinced after the divorce decree that the child was not his, but delayed for more than a decade in asserting his non-paternity.[24] In the interim two post-judgment proceedings had occurred at which he could have asserted non-paternity but did not.[25] The Arizona Court of Appeals held that the claim of non-paternity was barred by laches.[26] Since the "father ha[d] waited at least twelve years and ha[d] neglected several opportunities to bring his claim to the court's attention," the court held his delay unreasonable.[27]

Both of these cases employ the doctrine of laches in a post-separation—indeed, post-divorce—context. They do not support using the doctrine to establish paternity before a judicial decree has been entered.

▮▮▮▮ We believe that laches should not be available as an independent defense in paternity disestablishment actions which are brought prior to a judicial decree establishing paternity. Paternity by estoppel is an exception to the rule that only biological or adoptive parents are responsible for child support payments. If a party could defeat a paternity disestablishment action by proving

17. 28 Or.App. 347, 559 P.2d 529 (1977).

18. *Id.* at 530.

19. *Id.*

20. *Id.*

21. *Id.*

22. *Id.* (emphasis added).

23. 183 Ariz. 224, 902 P.2d 830 (App.1995).

24. *Id.* at 832–34.

25. *Id.* at 831–32.

26. *Id.* at 834.

27. *Id.* at 834.

the prejudice element alone, without a representation of paternity and reliance, the paternity by estoppel exception would be broadened beyond recognition. As we recently stated in *B.E.B.*, paternity by estoppel is "the exception, not the norm."[28] In our view there should not be a second exception which imposes a legal obligation of support on a husband who has not represented himself to be a child's father, or on one who has made such a representation which has not been relied on.[29]

### C. The Termination Date for Tom's Duty of Support

■ Because a constructive parental relationship and legal fatherhood were not established, Tom's duty of support will terminate. Tom and CSED agree in theory that termination should relate back to the date that the husband files his complaint to disestablish paternity.[30] However, because of the unusual facts involved in the present case, the parties dispute the application of this theory. After filing the initial complaint which sought to disestablish paternity, Tom filed an amended complaint seeking to establish paternity, and later again amended his complaint to seek disestablishment. Tom argues that the termination date should relate back to date of the original complaint, while CSED contends that relation back should extend only to the date he filed his second amended complaint.

In our view the correct answer is that the termination should be effective as of the date the first complaint was filed. Civil Rule 15(c) provides that "[w]henever" an amended claim is based on the same facts as the initial claim

it "relates back to the date of the original pleading." This test, which, at least literally, admits of no exceptions, is satisfied here. Further, CSED apparently did not change its position in reliance on the first amended complaint. Tom filed that complaint on December 22, 1994, yet the parties stipulated on December 27, 1994, to stop the distribution of child support payments received by CSED and instead to place them in escrow. We conclude therefore that Tom's support obligation ended as of the date he filed his original complaint.

## V. CONCLUSION

The judgment is REVERSED and this case is REMANDED with instructions to enter judgment in favor of appellant on his claim of non-paternity and to terminate his child support obligation as of November 10, 1994.

---

28. *B.E.B. v. R.L.B.*, 979 P.2d 514, 519 (Alaska 1999).

29. We note that effective January 1, 1996, the legislature imposed a three-year statute of limitations applicable to disestablishment proceedings brought administratively before CSED. This period runs from the child's birth or "three years after the petitioner knew or should have known of the father's putative paternity of the child, whichever is later." AS 25.27.166(b)(2); Ch. 57,

§ 28, SLA 1995. This statute is inapplicable here, because this case was brought before the effective date of the statute and in a judicial rather than an administrative proceeding.

30. CSED's agreement is consistent with its concession in *State, CSED v. Wetherelt*, 931 P.2d 383, 391 n. 15 (Alaska 1997). There it agreed to refund support collected from the husband after the filing date of his first pleading asserting non-paternity.