Constance L. COLE, a/k/a Connie
Cole, Appellant,

v.

Thomas S. BARTELS, Janet Bartels,
and Charles Bourque, Appellees.

No. S–9050.

Supreme Court of Alaska.

July 7, 2000.

---

**26.** *Id.* at 280.

**27.** *See id.*

**28.** *See id.*

Christian Bataille and Charles E. Cole, Fairbanks, for Appellant.

Christopher E. Zimmerman, McConahy, Zimmerman & Wallace, Fairbanks, for Appellees Thomas and Janet Bartels.

Robert B. Groseclose, Cook, Schuhmann & Groseclose, Fairbanks, for Appellee Charles Bourque.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Constance Cole sold Thomas and Janet Bartels a home with decayed walls. The Bartelses sued Cole, claiming that she willfully failed to disclose the defect. Cole filed a third-party claim against carpenter Charles Bourque, alleging that he had failed to fully disclose the "wall rot" to Cole. Bourque cross-claimed on the basis that Cole never paid him for his services. A jury found against Cole on all claims and awarded Bourque and the Bartelses compensatory and punitive damages. The superior court awarded prejudgment interest on the compensatory award and enhanced attorney's fees to seventy-five percent of actual fees. Cole appeals the awards of prejudgment interest and enhanced fees. We affirm.

## II. FACTS AND PROCEEDINGS

In 1992 State Farm Fire and Casualty Company inspected Constance Cole's Fairbanks home and found that certain repairs were necessary for Cole to retain coverage. In addition to problems with the roof and gutters, State Farm noted that the walls near the home's sunroom contained rot.

Charles Bourque was hired to perform repair work on Cole's house. While repairing the exterior of the sunroom walls, Bourque discovered that the plywood and framing members beneath the siding were "rotten." Although Bourque notified Cole and showed her the rot, Cole instructed him to replace the external plywood and siding without investigating or repairing the internal decay. Cole received a bill from Bourque reflecting this activity: "Remove siding & plywood on

room in back of garage. Totally rotten. Did not repair. Just replaced plywood & cedar."

Dissatisfied with Bourque's assessment, Cole sought a second opinion from carpenter Roger Burks. Cole did not inform Burks that Bourque had found the sunroom walls to be decayed and had only superficially repaired them. Burks determined that the sunroom walls had water damage but did not believe that they posed any structural concerns. Burks completed needed repairs to the roof and gutters.

Although Cole paid Burks, Cole never paid Bourque. After Bourque submitted an invoice to State Farm for payment, State Farm issued a check in the amount of $1,429 made payable to both Cole and Quality Carpentry, Bourque's business. Cole cashed the check, signing Quality Carpentry's name to the check without Bourque's knowledge or permission.

In 1994 Cole sold the house to her neighbors, Thomas and Janet Bartels. The Residential Real Property Disclosure Statement completed by Cole did not acknowledge any defects to the interior or exterior walls. The Bartelses learned of the rotting sunroom walls only when Bourque informed them of the problem at a yard sale in 1995.

In 1997 the Bartelses sued Cole for her failure to disclose the wall decay in violation of AS 34.70.090(c). In response, Cole denied that Bourque had informed her about the decay and joined Bourque and State Farm as third-party defendants. State Farm settled prior to trial. Bourque filed a counterclaim against Cole for failing to pay him and for forging his business's name on the check from State Farm.

After a trial, the jury found in favor of the Bartelses and Bourque on all claims. The jury found that Cole willfully failed to disclose the decay in the sunroom walls and awarded the Bartelses $17,500 in compensatory damages and $15,000 in punitive damages. The jury awarded Bourque $1,829 in compensatory damages and $2,500 in punitive damages on his counterclaim.

The superior court awarded enhanced attorney's fees under Civil Rule 82(b)(3) and prejudgment interest to both the Bartelses and Bourque. The court awarded Bourque seventy-five percent, or $22,221.00, of his attorney's fees and prejudgment interest of $1,162.90. The court also awarded the Bartelses seventy-five percent, or $19,063.13, of their attorney's fees, and prejudgment interest in the amount of $7,712.47.

Cole appeals only the superior court's awards of prejudgment interest to the Bartelses and enhanced attorney's fees to the Bartelses and Bourque.

### III. DISCUSSION

#### A. Standard of Review

We review a trial court's decision to award enhanced fees under the abuse of discretion standard.[1] The determination of whether the prevailing party is entitled to prejudgment interest is a question of law subject to this court's independent judgment.[2] "An award of prejudgment interest should be denied only to avoid an injustice," such as a double recovery.[3]

#### B. The Superior Court Properly Awarded the Bartelses Prejudgment Interest.

The superior court awarded the Bartelses $7,712.47 in prejudgment interest on the compensatory damages. Cole appeals this award of prejudgment interest on the basis that, because the Bartelses had not yet repaired the sunroom at the time of trial, the award of prejudgment interest on the unexpended repair costs constitutes an improper double recovery.

Prejudgment interest will be denied when such an award constitutes a double recovery.[4] The party opposing a prejudgment interest award bears the burden to show that a double recovery would result; otherwise prejudgment interest is awarded

1. See Marathon Oil Co. v. ARCO Alaska, Inc., 972 P.2d 595, 600 (Alaska 1999).

2. See Navistar Int'l Transp. Corp. v. Pleasant, 887 P.2d 951, 958 n. 10 (Alaska 1994).

3. Tookalook Sales & Serv. v. McGahan, 846 P.2d 127, 129 (Alaska 1993).

4. See State Farm Fire & Cas. Co. v. Nicholson, 777 P.2d 1152, 1158 (Alaska 1989).

as a matter of course.[5]  Thus, Cole has the burden to show that the award of prejudgment interest to the Bartelses resulted in a double recovery.

In *Sebring v. Colver*,[6] we reversed an award of prejudgment interest on the cost of future repairs.  The Colvers alleged a breach of warranty under a contract for the construction of a family residence.[7]  The jury awarded the Colvers damages both for money already expended on repairs and for the costs of repairs not yet performed.[8]  The trial court awarded prejudgment interest on the entire sum.[9]  We affirmed the award of prejudgment interest on the amount already expended by the Colvers but reversed the portion of the award compensating the Colvers for the costs of future repairs:

> [W]e conclude that the probable basis for the jury award was the estimated cost of repairs at the time of trial.  Since the financial impact of the passage of time was thus incorporated into the jury's damage award, any award of prejudgment interest on this amount would therefore constitute a double recovery.[10]

In contrast, we held in *State Farm Fire and Casualty Company v. Nicholson*[11] that no double recovery would result from an award of prejudgment interest on damages awarded for house repairs to be performed after trial.  There the plaintiffs sued their insurer for the tort of bad faith handling of their first-party insurance claim.[12]  The jury awarded $105,700 in compensatory damages, apparently relying on estimates of the costs of repairing damage to the house caused by a broken water main.[13]  The trial court awarded prejudgment interest on the compensatory damage award.[14]  On appeal, we

concluded that there was no danger of double recovery and affirmed the prejudgment interest award.[15]

Cole argues that *Sebring*, rather than *Nicholson*, should control.  But we indicated in *Nicholson* that prejudgment interest is precluded only when the award "would constitute a double recovery," not merely "when repair estimates are current at the time of trial."[16]  This danger of double recovery arises when repair costs increase between the time of the injury and the time of trial.  An award of prejudgment interest in such situations would not serve the purpose of prejudgment interest—to compensate the plaintiff for the use of money rightfully belonging to the plaintiff between the time of injury and the trial[17]—because the passage of time is already reflected in the higher repair costs.[18]  And it is the defendant's burden to demonstrate that the repair costs have increased since the date of the injury.

Here, the Bartelses suffered the loss—and their cause of action accrued—at the time Cole sold them the house without disclosing the defect.  Cole had use of the repair money that rightfully belonged to the Bartelses from the date of the sale.  Cole has offered no evidence demonstrating that the costs of repairing the sunroom walls have increased since the date of the sale.  Absent such a showing of double recovery, we will not reverse the superior court's award of prejudgment interest.

C. *The Superior Court Did Not Err in Awarding Enhanced Attorney's Fees to the Bartelses and Bourque.*

The superior court awarded the Bartelses and Bourque enhanced attorney's fees under

---

5.  *See Hancock v. Northcutt*, 808 P.2d 251, 261 (Alaska 1991).

6.  649 P.2d 932 (Alaska 1982).

7.  *See id.* at 933.

8.  *See id.* at 936.

9.  *See id.*

10.  *Id.* (footnotes omitted).

11.  777 P.2d 1152 (Alaska 1989).

12.  *See id.* at 1154.

13.  *See id.* at 1153, 1158.

14.  *See id.* at 1158.

15.  *See id.*

16.  *Id.*

17.  *See McConkey v. Hart*, 930 P.2d 402, 405 (Alaska 1996).

18.  *See Sebring*, 649 P.2d at 936.  We note that in *Sebring*, heightened repair costs reflected the high inflation prevalent during that time period.

Civil Rule 82(b)(3).[19] The superior court enhanced both fee awards to seventy-five percent. Cole argues that the Rule 82(b)(3) factors cited by the superior court do not support an enhanced award. Cole further argues that the seventy-five percent enhancement is improper in the absence of bad faith or vexatious conduct.

### 1. *Complexity*

■ Cole challenges the superior court's determination that enhanced fees were warranted because Cole's claims increased the complexity of the case.[20] In particular, the superior court found that Cole heightened the complexity by bringing in State Farm and Bourque as third-party defendants on claims that lacked factual support: "The litigation actions of Ms. Cole increased the attorney's fees to the Bartels by involving other defendants on theories that were not adequately investigated or believable in order to blame others for her conscious decision not to disclose the defect in the house to the Bartels[es]."

These conclusions are not erroneous. Cole's third-party claim against Bourque substantially increased the amount of pleading and motion practice. The Bartelses were forced to monitor actively the substantial body of pleadings generated by these third-party claims and to adjust litigation strategies accordingly. Therefore, the superior court did not abuse its discretion in this regard.

### 2. *Reasonableness*

■ As a further basis for awarding enhanced attorney's fees, the superior court determined that Cole's claims and defenses were not reasonable.[21] In particular, the superior court noted the inconsistent positions taken by Cole: "On the one hand she claimed [Bourque] owed her a duty to disclose the rot he discovered when working for her and on the other hand she claimed she did not pay him because she did not rely on what he told her."

The record supports these findings. Cole at first denied that Bourque had informed her of the decay. But she later claimed that she was aware of the decay but thought it was only minor or cosmetic in nature and did not pose any structural problems. But this belief did not relieve her of her duty to disclose.

Sellers of residential real property must make good faith efforts to disclose defects.[22] Cole failed to indicate any defects—major or minor—with respect to the sunroom. The disclosure form does not indicate that only major defects need to be disclosed: "The transferor is required to disclose defects or

**19.** Civil Rule 82(b)(3) states as follows:
> The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
> (A) the complexity of the litigation;
> (B) the length of trial;
> (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
> (D) the reasonableness of the number of attorneys used;
> (E) the attorneys' efforts to minimize fees;
> (F) the reasonableness of the claims and defenses pursued by each side;
> (G) vexatious or bad faith conduct;
> (H) the relationship between the amount of work performed and the significance of the matters at stake;
> (I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
> (J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
> (K) other equitable factors deemed relevant.
> If the court varies an award, the court shall explain the reasons for the variation.

**20.** *See* Rule 82(b)(3)(A). We note that complexity serves poorly as an independent enhancing factor where hourly fees, rather than a portion of a money judgment, serve as the subject of the award. In general, total fees calculated on an hourly basis will already reflect the complexity of a case. Thus, using complexity as an enhancing factor in the hourly fee context double-counts the effect of complexity on fees. "But this points to a weakness in the rule, not to trial court error." *Tenala, Ltd. v. Fowler*, 993 P.2d 447, 451 n. 19 (Alaska 1999).

**21.** *See* Rule 82(b)(3)(F).

**22.** *See* AS 34.70.010, .060, .090.

other conditions in the residential real property ... of which the transferor has been notified or has personal knowledge as of the date this disclosure statement is signed."

Because Cole was required by statute to disclose even minor defects of which she had been notified, we conclude that the superior court did not abuse its discretion by enhancing the fee awards based on the unreasonableness of Cole's claims and defenses.[23]

### 3. *Seventy-five percent enhancement*

■ The superior court enhanced the attorney's fee awards to Bourque and the Bartelses to seventy-five percent of actual fees incurred. In its order, the superior court did not explicitly find that Cole's conduct during the litigation was vexatious or in bad faith.[24] Cole claims that this enhancement constitutes an award of substantially full attorney's fees and is not justified in the absence of bad faith or vexatious conduct.

Cole relies primarily on *Marathon Oil Co. v. ARCO Alaska, Inc.*[25] In that case, the trial court awarded eighty percent of attorney's fees under Rule 82(b)(3) based on the "fundamental unreasonableness of Marathon's position."[26] Because we disagreed with this assessment and concluded that Marathon had "raised a legitimate issue," we reversed the award.[27] We also reiterated the rule that "an award of substantially 'full attorney's fees is manifestly unreasonable in the absence of bad faith or vexatious conduct by the non-prevailing party.' "[28] Under this rule we have required vexatious or bad faith conduct to warrant ninety percent[29] or full[30] attorney's fees awards.

Here, ample evidence supports the trial court's determination that Cole's position was unreasonable. Moreover, a seventy-five percent fee award does not constitute a "substantially full award" and thus does not require vexatious or bad faith conduct.

For these reasons, we affirm the superior court's seventy-five percent enhanced fee awards to Bourque and the Bartelses.

### IV. CONCLUSION

In summary, we AFFIRM the superior court's judgment in its entirety.

**23.** Cole also challenges this determination on the grounds that the legislature did not provide for an enhanced fee award under AS 34.70.090(d). This argument lacks merit because AS 34.70.090(d) permits "attorney fees to the extent allowed under the rules of court," including Rule 82(b)(3). Cole's claims that Bourque's attorney's fees are excessive and that Bourque was improperly awarded fees under both Rule 82(b)(1) and 82(b)(2) are likewise without merit.

**24.** As Cole correctly points out, the Bartelses' argument regarding bad faith misses the point. The Bartelses argue that Cole's bad faith conduct with respect to the disclosure of the rot justifies the enhanced fees. However, the bad faith conduct warranting an enhanced fee award under Rule 82(b)(3)(G) occurs *during the litigation*, not during the underlying transaction that is the subject of the litigation. *See, e.g., Reid v. Williams,* 964 P.2d 453, 463 (Alaska 1998) ("Rule 82 ...

provides protection for the winning litigant who is forced to respond to an opponent's ... bad faith litigation tactics.").

**25.** 972 P.2d 595 (Alaska 1999).

**26.** *Id.* at 605.

**27.** *Id.*

**28.** *Id.* (quoting Alaska R. Civ. P. 82, note to Supreme Court Order 1118am).

**29.** *See State v. University of Alaska,* 624 P.2d 807, 818 (Alaska 1981).

**30.** *See, e.g., Demoski v. New,* 737 P.2d 780, 788 (Alaska 1987); *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 588 (Alaska 1973).